STARR *against* CARRINGTON.

*A.,* of this state, being indebted to *B.,* of *Ohio,* gave him a promissory note for the amount due.  *B.* afterwards sent this note to *C.,* an attorney here, for collection ; who put it in suit, by attachment served on *A.'s* personal property, which *D.* receipted, and, in consequence thereof, he was eventually obliged to pay to *C.* the amount of the execution obtained in such suit.    *C.* remitted this money to *E.* in *Ohio,* to be paid over to *B.* ; but *B.* having previously received satisfaction of his claim from another source, it remained in *E.'s* hands, until *F.,* a son of *A.,* applied to *G.* in *Ohio,* stating, that his father had told him, that he might have it, and requested *G.* to procure it for him.    *G.* having obtained the money of *E.,* disbursed it for the payment of certain taxes in *Ohio,* and drew on *H.* in *Connecticut,* in favour of *F.,* for the amount.    *H.* accepted the draft, paid a small part of it in cash, and gave his note to *F.* for the balance ; which note remains due.    In foreign attachment, by *I.,* a creditor of *A.* against *H.,* as the trustee and debtor of *A.,* it was held, that *I.* was not entitled to recover ; the money advanced by *D.* having never become the money of *A.*

This was a *scire-facias,* in a process of foreign attachment, against the defendant, as the trustee and debtor of *John Mc Lean.*    A copy of the writ in the original suit was left in service with the defendant, on the 7th of *February,* 1818.

The cause was tried at *Danbury, September* term 1819, before Ch. J. *Hosmer.*

Some years ago, *McLean,* the absconding debtor, being in the state of *Ohio,* bought a horse of one *Samuel Dilly,* for which he gave his note for 80 dollars.    This note was afterwards sent to *Isaac Mills,* Esq. of *New-Haven,* in *Connecticut,* for collection ; by whom it was put in suit, by writ of attachment, served upon personal property of *McLean.*    He, with

his mother *Deborah McLean*, gave a receipt for the property to the officer; and the former being a bankrupt, the latter was obliged to satisfy the execution, which was obtained, out of her own estate. The money so paid, *Mills* sent to *Samuel W. Phelps*, of *Grand-River* in *Ohio*, to be paid over to *Dilly* ; but while the note was in *Mills'* hands, one *Gaylord* in *Ohio*, had sold some goods, which *McLean* had previously left with him, and from the avails had paid *Dilly* his demand against *McLean ;* in consequence of which, the money remitted by *Mills* remained in the hands of *Phelps*, until about two years and eight months ago, when *John A. McLean*, a son of the absconding debtor, sent a letter to one *Almon Ruggles*, residing in *Ohio*, stating that his father had told him, that he and his sister might have that money, if it could be obtained, and requested *Ruggles* to get it for them. *Ruggles* succeeded in obtaining the money, and applied it in payment of taxes on lands in *Ohio*, owned by *Joseph Trowbridge*, late of *Danbury*, deceased, and drew on the defendant, in favour of *John A. Mc Lean*, for the amount. The defendant accepted the draft, and paid thereon to *John A. McLean* three dollars in cash, and gave him, his, the defendant's, promissory note for eighty dollars, the balance, payable on demand, with interest. This note is now due, and unpaid.

Upon these facts, the plaintiff claimed, that in point of law, the defendant was, and ought to be adjudged, the trustee and debtor of *John McLean*, to the amount due on such note ; and that the plaintiff was entitled to recover that amount. The defendant resisted this claim, and contended, that he was not liable to the plaintiff, in any amount whatever. The court, upon the facts above stated, found the issue in favour of the plaintiff ; and gave judgment for him to recover of the defendant the sum of 87 dollars, 94 cents, with costs. The defendant excepted to the finding and judgment of the court, as erroneous in point of law, and, on that ground, moved for a new trial. This motion was reserved.

*J. Backus* and *Hatch*, in support of the motion, contended, 1. That the money in the hands of *Phelps* was never the money of the absconding debtor, but was, and is, the money of *Dilly*, or of *Deborah McLean*. It originally belonged to *Deborah McLean*. It was paid to the attorney of *Dilly*, in satisfaction of a judgment in his favour. If, by reason of the prior

Starr
*v.*
Carrington.

satisfaction of that judgment from another source, *Dilly* could not receive and hold the money, the right to reclaim it was in the original owner.   If the title to the money is changed, it belongs to *Dilly ;* if it is not changed, it belongs to *Deborah McLean.*

2. That the defendant is not the trustee and debtor of *John McLean,* because the money, to whomsoever it belonged, never came into the defendant's hands.   He was a mere stranger, on whom a draft was drawn by *Ruggles,* for his own convenience.   There was no privity between the defendant and *John McLean.*

3. That this draft was paid in full, by the defendant, before the service of the foreign attachment.   He was, therefore, no longer a debtor to any one.   The defendant's giving his note was equivalent to payment of the money.  *Barclay & al.* v. *Gooch,* 2 *Esp. Rep.* 571.

4. That if the defendant is the trustee and debtor of any one, he is such, by virtue of the note given to *John A. McLean,* and *he* alone is entitled to the money so due.

*Sherman,* contra, contended,   1. That the money paid to *Mills,* and by him remitted to *Ohio,* became the money of *John McLean.*   The soundness of this position is tested, by enquiring whether *Deborah McLean,* immediately after the payment of the money to *Mills,* could not have brought *assumpsit* against *John McLean* for money paid to *his* use, and recovered ?   Did she pay the money for *herself,* or for *him ?*

2. That *Ruggles* received, held and used the money, as the money of *John McLean ;* and as such, he virtually remitted it to *Connecticut ;* the paying of it out in *Ohio* for taxes, and drawing on the defendant for the amount, being only a mode of remittance.   The payee of the draft claimed his authority to receive the money from *John McLean* exclusively.

3. That the defendant, by his acceptance of the draft, became the trustee and debtor of the person having right to the money.

4. That the transfer of *John McLean's* right to the money to his son, if there was any, being merely voluntary, was fraudulent and void as against creditors ; and they may recover the money, by this process, in the same manner, as though no transfer had been attempted.   If the transfer to *John A. Mc Lean* was void, the defendant's giving a note to him can have

no other effect than if it had been given to *John McLean.* *Enos* v. *Tuttle,* ante, 27. It is, however, conclusive evidence of one fact for the plaintiff, *viz.* that the defendant is *indebted* for the amount.

HOSMER, Ch. J. The general proposition to be established in support of the decision of the superior court, is this, that at the time the foreign attachment was left in service with the defendant, he was the debtor of *John McLean.* Four distinct objections have been made, by the defendant. 1. That the money never belonged to *John McLean,* but to his mother *Deborah.* 2. That it is the right of *Dilly,* who has never relinquished it. 3. That it never came into the hands of the defendant; or if it did, the debt was extinguished by his note. 4. And that it is really the right of *John A. McLean.*

1. With respect to the first point, that the money never belonged to *John,* but to *Deborah McLean.* The objection is so obviously untenable as to require but few observations. When Mrs. *McLean* paid her son's execution, unless it was a donation, she became his creditor, and might immediately have sustained a suit against him, on implied contract. Her right to the money advanced was gone forever. There is no foundation of pretence to any right in Mrs. *McLean.*

2. Is the money the right of *Dilly,* who, it is said, has never relinquished it? *John McLean* owed *Dilly,* on a promissory note, which was transmitted to *Connecticut* for collection. After a suit on the note and judgment, payment was made, and the money sent to one *Phelps* for the use of *Dilly.* *Before* the transmission of the money to *Phelps, Dilly* had received payment of his note from another source. With knowledge of this fact, the money was retained in the hands of *Phelps,* until, on the application of *John A. McLean,* it was remitted to the defendant, in the manner which I shall hereafter mention. Upon these facts, the enquiry recurs, whether the money is the property of *Dilly?* On a correct construction of the motion, if it were necessary, *an actual relinquishment* of the money by *Dilly,* ought to be presumed. The defendant, at the trial, interposed no claim made by *Dilly* for the money; nor is there a reasonable pretence, that he has ever made any. The motion, it is to be inferred, has stated every fact requisite for the fair decision of the question before us;

*Fairfield,*
*June,*
*1820.*

*Starr*
*v.*
*Carrington.*

and to go out of it, in quest of possibilities, would lead to interminable conjecture. But let it be admitted, that there has been no actual release of *Dilly's right*; and then the question arises, what right has he? The answer may confidently be given, he has *none.* His debt, the defendant admits, was paid *before* the money was transmitted to *Phelps*; and the right of *Dilly*, which the motion shows to have been extinguished long since, is worse than visionary; it is known not to exist.

There is another ground applicable to this, and the next question equally, which is decisive. The plaintiff in this action legally takes the place of *John McLean*; and the defendant can make no defence, which he could not equally make, had a suit been instituted against him, by the absconding debtor. Let us suppose, then, that the money had been transmitted to the defendant, by *Phelps*, and he had given his promissory note for it to *John McLean.* This is stating the case fairly, on the principle, which cannot be contravened, that if there has been a fraud against creditors, by *John A. McLean*, the property is still in his father. Could the defendant sustain any of his objections? Were he to say the money is *Deborah McLean's,* his own act in promising to pay it to *John* would nullify the pretence. So, if the objection is raised, it belongs to *Dilly*, or to *Phelps*, the answer is conclusive, " You have, in opposition to this suggestion, promised to pay my absconding debtor." Or, if he should deny his being indebted for the money, his note would estop him. Indeed, the same replies may be made to the facts as they now exist; and it is incontrovertibly clear, if the money is not paid to the creditor of *John McLean*, payment of it will be coerced by *John A. McLean.* The objections proposed for the defendant are *felo de se.* Not one of them can be made, if the plaintiff's suit fails, against the legal demand of *John A. McLean.* I view this, therefore, as the effort of this person, through the mouth of his debtor, to repel the plaintiff's claim, for his own benefit, and by suggestions in which the defendant has no imaginable interest.

3. As to the third objection made, that the money never came into the hands of the defendant; and if it did, that his note has extinguished the debt; to prove its futility requires only a recurrence to the facts.

*Fairfield,*
June,-
1820.

Starr
*v.*
Carrington.

*Phelps,* on the request of *Ruggles,* in behalf of *John A. Mc. Lean,* who claimed the money as a donation from his father, paid it to him, and *Ruggles* advanced it for certain taxes. The reason of drawing on the defendant, for the payment of the money thus advanced, does not appear. He either derived benefit from the advancement, or he did not. In the former event, he became indebted for the money, on the advancement; and in the latter, by the acceptance of the bill of exchange drawn on him by *Ruggles,* with a claim upon him for reimbursement. It is no matter in what mode the obligation to pay the money devolved on the defendant. It is sufficient, that it did devolve on him, and that he has promised to pay it. The giving of the note has changed the *form* of the debt, but, to all substantial purposes, has made no other difference.

4. This brings me to the last question, whether really the money demanded is the right of *John A. McLean.* It must be borne in mind, that the money was obtained from *Phelps,* by fraud; and that the plaintiff, the creditor of *John McLean,* stands in his place. In *Enos* v. *Tuttle,* ante 27., the money attached was due to *Julius Bixby,* on a promissory note; but because in reality it was the debt of *Green Bixby,* the cover was stripped off; and the security admitted to make no difference. So, in *Starr* v. *Tracy* & al. 2 *Root,* 528., it was determined, that the goods of an absconding debtor, covered by a fraudulent conveyance, were liable to a foreign attachment for his debt. In the case of *Enos* v. *Tuttle,* before cited, the court adopted the principle, that the act relating to absconding debtors should receive the most liberal construction; and that the debts attachable by one of its provisions, were not legal demands merely, but *dues,* in the broadest and most equitable sense of the term. Casting aside the forms of the transaction, and viewing it as if the money from *John McLean* had circuitously got into the hands of the defendant, for his use, which, in my opinion, is the truth of the case, the plaintiff has right to it, and the judgment of the court was correct.

It has been said, that the creditor can never draw money out of the hands of the garnishee, which could not be drawn out by the absconding debtor. This principle is manifestly incorrect. In every instance of fraudulent conveyance, the grantor cannot recover, but unquestionably his creditor may. I consider the law of foreign attachment as of great utility, and would give it a liberal construction, to effectuate its ob-

*Fairfield,*
June,
1820.

Starr
*v.*
Carrington.

ject. I should regret extremely the adoption of principles, which would narrow the advantages of that act; and, in cases like the present, would give the defendant the benefit of objections in which he has no interest. It would not be very pleasant to stand by, and witness the fraudulent conduct of persons in the predicament of *John A. McLean,* crowned with success.

PETERS, J. The statute, under which this question has arisen, being against fraud, is to be liberally and beneficially expounded; but not so liberally as to embrace those, who are neither parties nor privies to the fraud, who are neither the actors therein, nor the subjects thereof.

The plaintiff has acquired all the rights of the absconding debtor, or, in the expressive language of this court, "stands in his shoes," and is entitled to recover whatever goods, estate, or effects have been entrusted to the defendant, by the absconding debtor, for his own use, or conveyed fraudulently, which he could not himself recover. But what fraud has been committed, or effects entrusted? *John McLean,* like an honest man, paid his debt in *Ohio;* the evidence of that debt being in this state. The attorney of the creditor, not aware of what was done in *Ohio,* enforces payment here, not from the debtor, but his *surety,* and remits the money to his agent in *Ohio,* to be paid over to the creditor, who *receives it not.* *John A. McLean,* a son of *John McLean,* says to his friend in *Ohio,* " my father says I may have this money; procure and send it to me." This friend obtains and uses the money, and draws for the amount on the defendant, till then a stranger to all the parties, and all their acts. He accepts and pays this draft, partly in cash, and partly by a note to the payee; and this, says the plaintiff, constitutes the defendant the trustee of *John McLean.* But this money never was his. It was advanced, by his surety, by mistake, to pay his debt previously paid by him; and she had a right to reclaim it, or stop it *in transitu.* Had it returned to her, she might as well have been made trustee as this defendant; and with more propriety may every other person, through whose hands it has passed. This money is either *Dilly's,* or *Deborah McLean's.* Had it reached *Dilly, John McLean* could not have reclaimed it; because it never was his; or, if it were his, a debtor, who pays his debt, and afterwards suffers it to pass into judgment,

and pays it again, can never recover it back, by an original suit, at law or in equity, while that judgment remains in force. *Marriot* v. *Hampton,* 7 *Term Rep.* 269.    *Moses* v. *Macferlan,* 2 *Burr. Rep.* 1005.

Suppose this money in the hands of *Phelps,* refused by *Dilly,* and demanded by *John McLean* and *Deborah McLean;* to which would the law raise a promise?  *Indebitatus assumpsit* is bottomed on equity, and the promise arises *ex equo et bono.* Or, suppose, with Lord *Mansfield,* "an indorsee of a promissory note, having received payment of the maker, sues and recovers the same money of the endorsor, who knew nothing of such payment;" (*a*) I know of no principle in law or equity, which would award this money to the maker, on setting aside the judgment.  If *Dilly* has not renounced this money, he may now recover it of *Phelps,* for whom, its having been taken from him by fraud, would be no defence. (*b*)  Did *John McLean* entrust, or fraudulently convey, goods, wares or effects to this defendant?  It does not appear, that they ever saw or heard of each other.  Was the money obtained from *Phelps,* by fraud?  If so, by whom?  Not by this defendant, who had no agency in the transaction; nor by *John McLean;* for the motion does not state that he did it, or caused it to be done.    The declarations of *John A. McLean* are not evidence against his father; and fraud is not to be presumed without proof.  If *Phelps* has been defrauded, he has his remedy against the perpetrator; but it would not enure to the benefit of the plaintiff, or to the prejudice of the defendant.

This case has no affinity to *Enos* v. *Tuttle.*  In that case, *Green Bixby,* the absconding debtor, with an *intent* to defraud his creditors, conveyed his property to *Tuttle,* and took a note payable to his son, who endorsed it to *Guernsey,* both being privy to the fraud; and this court, very properly, adjudged *Tuttle* the trustee of *Green Bixby.*

For these reasons, I am of opinion that the decision of the superior court was incorrect, and that a new trial ought to be granted.

CHAPMAN and BRISTOL, Js. were of the same opinion.

BRAINARD, J. was absent.

New trial to be granted.

(*a*) 2 *Burr. Rep.* 1009.    (*b*) *Levy* v. *Bank of the United States,* 4 *Dall.* 234. *Griswold* v. *Judd,* 1 *Root,* 22.