ORLANDO SUTHERLAND *vs.* ROSCOE P. BROWN ET AL.

Third Judicial District, Bridgeport, October Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

It is the policy of our law that all the property of a debtor not exempt from execution should be subject to the demands of his creditors, and that every facility consistent with the reasonable immunities of debtors should be afforded to subject such property to legal process.

General Statutes, § 880, provides that when the effects of a defendant are "concealed" in the hands of his agent or trustee so that they cannot be found and attached directly, they may be taken by process of foreign attachment. *Held* that the original purpose of the statute, to afford a remedy for the prevention of fraudulent conveyances, or of fraud by absconding debtors, had long since been extended by legislation, and that it was not essential to the validity

of a foreign attachment of tangible personal property that the property should be secreted or hidden from sight by the agent or trustee.

Household furniture in the possession and use of lessees may be taken by foreign attachment, subject to their rights, when they do not offer to surrender the property to the officer nor give him permission to enter their dwelling-house to attach it.

Whether such property could have been secured by foreign attachment process if the garnishees had offered to surrender it to the officer, and there had been no obstacle whatever to an attachment by seizure and removal, *quære.*

A ruling on demurrer becomes unimportant where the same question is again presented by the finding of facts.

Argued October 25th—decided December 19th, 1911.

Suit for an injunction to restrain the defendants from selling on execution certain household furniture which they claimed to have attached, except subject to a mortgage for $500 held by the plaintiff, brought to and tried by the Court of Common Pleas in New Haven County, *Wolfe, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendants.

*Error and judgment reversed.*

*George M. Wallace* and *Ezra C. Terry*, for the appellants (defendants).

*James E. Wheeler*, for the appellee (plaintiff).

HALL, C. J.   The plaintiff, claiming to be a mortgagee of certain household furniture, asks by this action an injunction to restrain the defendants, Mason and Brown, the former a creditor of the owner of said furniture, and the latter an officer who is alleged to have attached and levied upon it in behalf of Mason, from selling said property on execution.

The facts relevant to the claims of the respective parties are these:—

On the 21st of April, 1910, this property, consisting of a piano, paintings, rugs, etc., in all some one hun-

dred articles of household furniture, was owned by one DeFord, who on that day undertook to mortgage it to the plaintiff to secure payment of his note to the plaintiff for $500.

The mortgage, called Exhibit A, enumerates the articles of furniture, but does not describe them as household furniture, nor does the court find that they were used by the owner in housekeeping, nor does the mortgage state the location, or who was in possession, of the property, nor the residence of the mortgagee. The mortgage was not recorded until November 29th, 1910.

Some time prior to November 26th, 1910, DeFord leased the apartments in which said furniture was situated, as furnished apartments, to William Vonder-Brake and Louis Jordon. When the term of the lease commenced and ended does not appear.

On November 26th, 1910, and while VonderBrake and Jordon were still in possession of said furniture in said apartments, the defendant Mason commenced an action against DeFord for $1,100 damages, and garnisheed said tenants VonderBrake and Jordon, the process being served by the defendant Brown, who, as well as the other defendant, Mason, knew at the time of the service of the copies that the furniture belonged to DeFord.

At the time of the service of copies the officer, Brown, made no demand for the delivery of said furniture, nor any attempt to take possession of it.

The trial court states in its finding that at the time of the service of the garnishee process the furniture "was so situated that it could have been attached by said officer, and that he could have taken the same into his possession," and states, among its conclusions, that the property was not then concealed so that it could not be found or attached, but was exposed so

that it could have been attached, and that, therefore, no valid attachment was made by the officer by the foreign attachment process.

On the 27th of December, 1910, Mason obtained judgment in said action against DeFord for $1,054, and on February 10th, 1911, Brown gave notice that he would sell the property by virtue of the execution issued upon such judgment.

He was restrained from doing so by a temporary injunction, which by the judgment in this action was made permanent.

Neither DeFord nor the lessees, VonderBrake and Jordon, appear to object to the sale of the property on execution. To enable the plaintiff to successfully do so, the law required him to prove a title valid as against Mason on February 10th, 1911, when Brown attempted to sell the property on execution. This he endeavored to do by proving that Exhibit A was executed upon a good consideration on the 21st of April, 1910, and was recorded November 29th, 1910, and before Brown took the property upon the execution.

It is not disputed that DeFord retained possession of the personal property at the time he attempted to mortgage it to the plaintiff, and that the plaintiff has never since taken possession of it. The plaintiff, therefore, acquired only such title under his mortgage as is made valid by our statutes when personal property is mortgaged without delivery of possession.

Section 4132 of the General Statutes provides, among other things, that "when . . . any dwelling house, together with the household furniture belonging to its owner, and used by him in housekeeping; . . . or any of the personal property above mentioned, without the real estate in which the same is situated or used; . . . shall be mortgaged by a deed containing . . . a particular description of such personal property, executed,

acknowledged, and recorded as mortgages of land, the retention by the mortgagor of the possession of such personal property shall not impair the title of the mortgage."

Respecting the validity of the mortgage the defendants make two claims:—

First, that the mortgage is invalid because it fails to properly describe either the parties to the mortgage or the property sought to be mortgaged, inasmuch as it does not state the mortgagee's place of residence, nor the house, town, or State in which the property is situated, nor that it was in a dwelling-house, or in any house, nor that it was used or was intended to be used by the mortgagor in housekeeping, and because it has not been found that it was ever used by the mortgagor in housekeeping.

Second, that the mortgage was invalid as against these defendants because it was not recorded until November 29th, 1910, nor until after the defendants had on the 26th of said November attached the property by the foreign attachment process.

As the questions made by the first of these claims are neither properly presented by the reasons of appeal, nor appear to have been raised in the trial court, we do not discuss them.

The second claim was decided by the trial court adversely to the defendants upon the ground that no valid attachment was made by the officer by the service of the garnishee process on the 26th of November for the reason, as given by the court, that the furniture sought to be attached was not concealed, but was accessible to the officer for attachment in the ordinary manner, by seizure and removal.

That the property was not concealed, but was open to attachment, and could have been taken and removed by the officer, and that therefore it could not

have been reached by the foreign attachment process, were evidently conclusions of the trial court drawn from certain undisputed facts stated in the finding, and based upon its interpretation of our statute regarding foreign attachment.

The facts regarding the situation of the furniture at the time of the service of the foreign attachment process and from which the inference was drawn that it was not concealed but was open to attachment, are these: The furniture came into the possession of the garnishees by virtue of a lease from DeFord. Whether the lease had expired at the time of the service upon the garnishees is not expressly found. The property was in apartments of which the garnishees were in possession, and constituted the furniture thereof. The defendants knew that the furniture was in said apartments and that it belonged to DeFord. No demand was made by the officer for the delivery of the furniture. It is not found, and apparently it was not the case, that the garnishees offered to deliver the furniture to the officer, at the time of the service of the foreign attachment process. What averments respecting the garnishees were contained in the writ of foreign attachment, other than that they were therein described as the agents, trustees, and debtors of DeFord, does not appear.

Section 880 of the General Statutes provides that "when the effects of the defendant in any civil action . . . are concealed in the hands of his agent or trustee so that they cannot be found or attached, or where a debt is due from any person to the defendant, . . . the plaintiff may insert in his writ a direction to the officer to leave a true and attested copy thereof and of the accompanying complaint . . . with such agent, trustee, or debtor of the defendant, or . . . at the usual place of abode of such garnishee; and from

the time of leaving such copy, all the effects of the defendant in the hands of any such garnishee, and any debt due from any such garnishee to the defendant, . . . shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover."

If we are to assume that at the time of the service of the foreign attachment process the lease to Vonder-Brake and Jordon had not expired, and that they still held the furniture as lessees, the officer could not lawfully have taken possession of it and removed it, even if it was exposed to view. The tenants, as lessees, would in that case have had a property right in the furniture which these defendants could not have deprived them of. In the absence of fraud upon the part of DeFord, the present defendants had no greater right to take the property than DeFord had. Had the officer attempted to attach it by seizure and removal, the tenants could have at once replevied it. No question seems to be made but that a lessee holding, as such, possession of the personal property of his lessors, may properly be garnisheed, provided his rights are not prejudiced thereby.

It is the policy of our law "that all the property of a debtor not exempt by law from execution, should be subject to the demands of his creditors; and that every facility, consistent with the reasonable immunities of debtors, should be afforded to subject such property to legal process." *Gager* v. *Watson*, 11 Conn. 168, 171.

Our statute of foreign attachment was originally passed in May, 1726 (Statutes of Connecticut, 1808, p. 61). It did not then contain the word "concealed," but provided for an attachment by garnishment when "no lands, goods or effects of any absent or absconding debtor, in the hands of his attorney, factor, agent or trustee shall be exposed to view, or can be found or

came at, so as to be attached." The language of the original Act and its preamble show that the attachment by garnishment was to prevent fraud by the "ill-minded, . . . absconding debtor," and the words "concealed in the hands of his attorney, agent," etc., which appeared first in the Act of 1821 (Rev. 1821, p. 237), in so far as they refer to an actual attempt to hide the property from attachment, appear to refer to a fraudulent attempt by the debtor who was supposed to have absconded. *Culver* v. *Hall*, 20 Conn. 409, 415.

But attachment by factorizing process, as it is now generally called, has long since ceased to be merely a remedy for the prevention of fraudulent conveyances, or of fraud by absconding debtors. The statute should be liberally construed, and parts of its language more especially adapted to its earlier purposes may properly be regarded as inapplicable to some of its present objects.

In *Treadway* v. *Andrews*, 20 Conn. 384, 392, 394, this court, in speaking of our foreign attachment statute, said: "The provisions of the statute having been found highly beneficial in their operation, they have been greatly extended, by recent statutes; and yet the same simplicity in form has generally been retained in practice"; and that the statute had always received a liberal construction.

In *Starr* v. *Carrington*, 3 Conn. 278, 283, CHIEF JUSTICE HOSMER, speaking for the court, said: "I consider the law of foreign attachment as of great utility, and would give it a liberal construction, to effectuate its object. I should regret extremely the adoption of principles, which would narrow the advantages of that act."

The words of our present statute, "concealed in the hands of his agent or trustee so that they cannot be found or attached," do not mean that personal prop-

erty can only be reached by foreign attachment when it is hidden from sight by the agent or trustee, so that it cannot be found, and only when it is impossible for the officer serving the process to take the property and remove it. It was held in *Treadway* v. *Andrews*, 20 Conn. 384, that the *scire facias* in a process of foreign attachment need not allege that the property in the hands of the garnishee *could not be found to be attached* in the original action; and further in that case (page 393) it was held that because the garnishee claimed to be the owner of the property sought to be attached it could be reached by foreign attachment process although accessible to the officer.

What rights the garnishees in the present case claimed in the furniture at the time of the garnishment does not very clearly appear. As we understand the finding, they were not at home when the copies were left in service. They were evidently holding the property either under a lease, or after the expiration of a lease, from DeFord. The property was in their actual possession. It was in their dwelling-house, and was then in use by them as household furniture. They did not offer to surrender it to the officer, nor give permission to the officer to enter their dwelling-house to take it. The statute did not require the officer to demand that it be delivered up for attachment.

Whether the property could have been secured by foreign attachment process if the garnishees had offered to surrender it to the officer and there had been no obstacle whatever to an attachment by seizure and removal, it is unnecessary to decide.

In *Treadway* v. *Andrews*, 20 Conn. 384, the charge of the trial court that the goods were liable to the process of foreign attachment if they were so situated that an officer would not be bound to take them without indemnity from the attaching creditor, was sustained.

The facts before us show that there was sufficient embarrassment to the attachment by the ordinary writ to meet the conditions covered by the word "concealed" and to render the attachment of November 26th by foreign attachment valid. *Treadway* v. *Andrews,* 20 Conn. 384; *Swett* v. *Brown,* 5 Pick. (Mass.) 178, 180; *Burlingame* v. *Bell,* 16 Mass. 318.

The record justifies us in assuming that on February 10th, 1911, the garnishees delivered the goods in question to the officer, Brown, upon demand made by him upon the execution issued in the foreign attachment suit, and that he so held them at the time the defendants were enjoined in this action. That such were the facts was averred in paragraphs 8 and 9 of defendants' amended answer, which upon the plaintiff's motion were expunged by the court as irrelevant and immaterial.

As the defendants' answer which was demurred to was afterward amended, and the facts found upon the plaintiff's denial of its averments, a consideration of those reasons of appeal based upon the sustaining of the demurrer to the first answer becomes unnecessary.

There is error, and the judgment is reversed, and the cause remanded with direction to render a judgment dissolving the injunction.

In this opinion the other judges concurred.