THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY *vs.* THE BOARD OF WATER COMMISSIONERS OF THE CITY OF HARTFORD.

First Judicial District, Hartford, January Term, 1925.
WHEELER, C. J., BEACH, CURTIS, KEELER and JENNINGS, Js.

If the same questions presented by a demurrer are subsequently raised and passed upon at the trial of the issues, this court will only review the later rulings, since the disposition of the demurrer has then ceased to be of any importance.

A demurrer does not admit allegations as to the construction or legal effect of a contract.

The contract whereby the defendant acquired the privilege of laying its water-pipes under the plaintiff's railroad tracks provided that the work should be done under the plaintiff's supervision and

that the defendant should "indemnify and save harmless said Railroad Company against any and all claims, damages and expenses to which it may be subjected by reason of any work done in connection with the construction or maintenance of said pipes." In an action by the plaintiff to recover the reasonable value of materials and labor furnished by it at the defendant's request in supporting and protecting its tracks during the progress of the work, the defendant claimed that there could be no recovery *upon the contract* without proof that the support and protection were made necessary by the existence of a danger so obvious and pressing as to warrant the plaintiff in intervening upon its own motion. *Held* that there was no merit to the defendant's claim, since the contract, when construed in the light of the peculiarly difficult and delicate nature of the operation and the superior facilities and experience possessed by the plaintiff, clearly contemplated that the plaintiff should be reimbursed for any such work done at the defendant's request.

The defendant's liability under the contract was in no way affected by the fact that it employed an independent contractor to do all the work connected with the laying of pipes; nor could it be seriously claimed that the plaintiff had waived its rights against the defendant by submitting its bill, at defendant's suggestion, to the contractor.

The meaning of the word "indemnify" is to be determined by the context of the instrument in which it occurs, taken in connection with the objects to be secured thereby and the circumstances surrounding the transaction.

Argued January 13th—decided June 1st, 1925.

ACTION to recover damages for an alleged breach of contract to indemnify the plaintiff for expenses incurred by it in supporting and protecting its tracks during the laying of water-pipes thereunder by the defendant, brought to the Superior Court in Hartford County where the demurrer to the defendant's answer was sustained (*Kellogg, J.*) and the cause was later tried to the court, *Hinman, J.;* judgment rendered for the plaintiff for $700, and appeal by the defendant. *No error.*

The defendant, being desirous of extending its watermains by laying same underneath the tracks of the

plaintiff at Farmington and Burlington in this State, entered into a certain written agreement, executed by both parties, wherein plaintiff gave defendant license and permission to perform such work, and provision was made as to certain details connected therewith. The plaintiff did some work in connection with crossings of its right of way underneath its tracks in the towns above mentioned, for which it claimed payment under the provisions of the agreement, and as defendant refused to pay, brought suit. In its complaint it alleges (1) the incorporation of plaintiff; (2) the execution of the agreement aforesaid, which is made Exhibit A of the complaint; (3) that the provisions of the agreement were that defendant should indemnify and save harmless the plaintiff against any and all expenses by reason of work done in connection with the construction or maintenance of defendant's water-pipes; (4) that defendant laid water-pipes under plaintiff's right of way at the points above mentioned; (5) that "plaintiff expended $450.16 in supporting and protecting its tracks while defendant was laying said pipes at said points on plaintiff's right of way;" (6) that payment of this sum had been demanded and refused, and (7) that defendant owes plaintiff $450.16. The first, second and sixth paragraphs of the complaint are admitted in the answer, the remaining paragraphs are put in issue by categorical denials or averments of want of knowledge in the first five paragraphs of the answer, and the answer then proceeds (paragraphs 6 to 11 inclusive) to set out (6) that defendant employed the Hanover Contracting Company to lay its pipe-line under the tracks of the plaintiff (7) after the defendant had secured the right of way under Exhibit A; (8) that defendant never contracted with plaintiff to do the work above referred to, but all agreements therefor were made with the contracting company aforesaid,

without the knowledge or participation of defendant; (9) that the contracting company completed its contract with defendant and a final settlement was made between the parties; (10) that on information and belief the work aforesaid was billed by plaintiff to the contracting company, and no notice of the claim was ever given to defendant until long after completion of the work of the contracting company for defendant and a final settlement between them; (11) that at the date of this final settlement defendant had funds in its hands of the contracting company in excess of plaintiff's claim, and the claim could have been secured had reasonable notice thereof been given defendant. To these last six paragraphs of the answer the plaintiff demurred, on grounds which will be hereafter stated and discussed in the opinion, and the demurrer was sustained (*Kellogg, J.*). Trial of the cause was afterward had upon the pleadings and judgment rendered for plaintiff for the amount of its claim and interest. The trial court found in addition to the execution of the agreement (Exhibit A) that defendant, through a contract with the contracting company, laid water-mains across plaintiff's right of way in the two places above referred to, under supervision of defendant's chief engineer. In contracting and laying this pipe it was necessary to excavate under plaintiff's tracks and suitably to provide for the support of the same during the progress of the work, and this work was done by the plaintiff.

The supporting and protecting of the tracks was work which could properly only be done at least under strict supervision by competent and experienced railroad men and could best be performed by the plaintiff, since it had labor experienced in, and the proper materials available for, such an undertaking. The defendant or its agent, other than the contracting company, gave plaintiff notice or requested plaintiff to do

the work, which was done under the immediate direction of Henry W. Stiles, the plaintiff's bridge supervisor. On December 18th, 1913, Henry W. Stiles reported the completion of the work done by the plaintiff at Farmington and the material used and the labor required for the work. On October 1st, 1914, he reported the completion of the work done by the plaintiff at Burlington and the material used and the labor required for the work.

On January 15th, 1914, the plaintiff submitted a bill to the defendant, in the sum of $204.91, for the work and materials reported on December 18th, 1913, by Stiles. On January 23d, 1914, the defendant wrote the plaintiff a letter stating that the work covered by the bill for $204.91 was done for the contractor who was laying the water-pipe and should be submitted to it. On October 21st, 1915, the plaintiff again wrote a letter to the defendant, and again on December 6th, 1915. The defendant had notice of the plaintiff's claim against it for the work done by the plaintiff in supporting and protecting its tracks before defendant settled with the contracting company, and the contracting company has never paid the plaintiff for the work done by the plaintiff, nor has the defendant paid therefor. The labor and materials furnished by the plaintiff in supporting and protecting its tracks were reasonably worth the sum of $450.16.

The agreement, Exhibit A, among other matters, provided: "Said licensee shall maintain said water-pipes in a state of good repair, so that there shall be no leakage therefrom; shall lay and maintain said water-pipes under said railroad in a good and workmanlike manner under said Railroad Company's supervision; . . . and shall indemnify and save harmless said Railroad Company against any and all claims, damages and expenses to which it may be subjected by

reason of said pipes being in said premises, or by reason of any work done in connection with the construction or maintenance of said pipes."

The following conclusions were reached by the court: "(1) The work of supporting and protecting plaintiff's tracks was necessary to be done in consequence of the laying of pipes under the plaintiff's railroad by the defendant through its contractor. (2) This work was done by the plaintiff. (3) Under the contract between the plaintiff and the defendant, the defendant was obligated to indemnify and save harmless the plaintiff against any and all expense to which it might be subjected by reason of said pipes being in said premises, or by any work done in connection with the construction or maintenance of said pipes, including the work done by the plaintiff in supporting and protecting its tracks. (4) The submission of bills by the plaintiff to the contracting company was at the suggestion and request of the defendant and is not sufficient to absolve the defendant from liability. (5) The defendant is liable to the plaintiff for the reasonable worth of said work."

Further facts appear in the opinion.

Defendant's reasons of appeal are as follows: "(1) The court erred in sustaining plaintiff's demurrer to paragraphs six, seven, eight, nine, ten and eleven of the answer. (2) The court erred in holding that the plaintiff by its contract with the defendant, plaintiff's Exhibit A, did not authorize the defendant to cause all the necessary work to be done for the purpose of laying a water-pipe under plaintiff's tracks. (3) The court erred in holding that the defendant by its contract, plaintiff's Exhibit A, agreed to pay the plaintiff for any work done or materials furnished, otherwise than to indemnify the plaintiff for work or materials which it was necessary for the plaintiff to perform or furnish

by reason of the laying of said water-pipes by the defendant. (4) The court erred in holding that the defendant agreed to pay or guarantee the payment for work done or materials furnished by the plaintiff under an independent arrangement with the contractor employed by the defendant to perform said work. (5) The court erred in holding that the defendant agreed to compensate the plaintiff for work done or materials furnished which it was not necessary for the plaintiff to perform or to furnish by reason of any acts or defaults of the defendant or its contractor in laying its water-pipe under the tracks of the plaintiff. (6) The court erred in holding that the plaintiff might recover in this action any claim for work done or materials furnished which did not arise directly under the contract, plaintiff's Exhibit A."

*Alvan Waldo Hyde,* for the appellant (defendant).

*Harry L. Filer,* for the appellee (plaintiff).

KEELER, J. The first reason of appeal assigns error in sustaining the plaintiff's demurrer to paragraphs six to eleven of the answer. These paragraphs in themselves attempt to allege a complete and independent defense to the complaint and were evidently treated as such by the trial court, and properly so. As a preliminary question defendant invokes the rule that a demurrer interposed at any stage of the case searches the record and judgment is awarded against the party who first advances a defective pleading, and specifically urges that the complaint is defective in that it supplies no allegation "that plaintiff's expenditures for supporting its track during the performance of defendant's work was due to any cause specified in the contract of indemnity." The second paragraph of the

complaint pleads the written contract between the parties and annexes the same as an exhibit, making it part of the paragraph; the third paragraph counts upon the part of the contract as providing for indemnification for any expense incurred by plaintiff by reason of work done in connection with the construction of the pipes; the fourth alleges work performed by plaintiff pursuant to the contract, and the fifth pleads the value of the work. The trial court held correctly that this was pleading sufficient in form and substance to permit a recovery by plaintiff. Whether it was so in substance depends upon the construction to be given to the license contract, Exhibit A, and this is considered at large in the latter part of this opinion. The paragraphs of the answer to which the demurrer is addressed are not singly or collectively a defense to the action. The sixth and seventh paragraphs, alleging execution of the contract, Exhibit A, and the employment of the contracting company by defendant, are merely introductory. The mere fact that in the general execution of the pipe-laying a contractor was employed is immaterial and of no significance; the contract, Exhibit A, is an unqualified undertaking to indemnify plaintiff against expenses incurred by it in connection with the laying of the pipe. It is of no consequence whether the agent or contractor was an independent contractor. As soon as the plaintiff was at any expense connected with defendant's construction, the provisions of the contract applied thereto. And for the same reasons it is equally immaterial to say that defendant did not make a special contract with plaintiff to do the work actually performed, or that this work was within the terms of the contract between defendant and the contracting company, for which the latter was paid in full by the defendant, as alleged in paragraphs eight and nine of the answer. The evident

purpose of the defendant, in paragraph ten of the answer, is to claim that by reason of the facts therein set up, as heretofore stated, the plaintiff had waived its rights to be indemnified by way of reimbursement for expenses incurred by attempting to collect its bill from the contractor, and that it had no notice of plaintiff's claim until the contractor had completed its work. Such a fact, if true, shows no intent to relinquish any right it might have under the contract. Paragraph eleven, alleging that at the date of settlement with its contractor defendant had sufficient funds in its hands due to the contractor to have paid plaintiff's claim, had the latter used due diligence and given notice of its claim, is apparently an attempt to plead an estoppel. There is here plead no misrepresentation or concealment on the part of the plaintiff, which induced the defendant, in reliance thereon, to forego some right or advantage. Plaintiff was under no obligation to inform defendant that it intended to enforce the provisions of the contract between them. If it had a right of action against defendant, it could enforce it at any time within the period of limitation. The allegations of these paragraphs are immaterial, although in some respects evidentially available under the earlier allegations of the answer. There is nothing set forth in these paragraphs which would not be available in evidence under the prior allegations of the answer and, in fact, the finding of the court shows that substantially all of them were raised at the trial, and had the attention of the court. This last consideration is a sufficient answer to defendant's claim that it had the right to include the paragraphs in question, as emphasizing and elaborating its specific denials made earlier in the answer, even if they were not available as a complete or partial defense. This last consideration also removes the rulings on demurrer.

While technically remaining the subject of appeal, and not *ipso facto* removed from the case by reason of subsequent trial of the issues of fact, yet when the very questions raised on the demurrer are in fact afterward passed upon at the trial, the appellate tribunal will not review the questions upon the state of the record existing at the time the demurrer was filed and argued. Making such a review would be to decide a moot question. *Mechanics Bank* v. *Woodward,* 74 Conn. 689, 51 Atl. 1084; *Neuschtat* v. *Rosenthal,* 87 Conn. 400, 87 Atl. 741; *Sutherland* v. *Brown,* 85 Conn. 67, 81 Atl. 1033. Referring to the demurrer and all the claims raised thereby, we have to remark that the fundamental claim of defendant lies in the correctness of its construction of the contract, Exhibit A, which is not admitted as a fact by the demurrer (*Woodruff* v. *New York & N. E. R. Co.,* 59 Conn. 63, 90, 20 Atl. 17), and the proper construction of this instrument is the fundamental consideration in the instant case, and so treated at the hearing upon the merits.

Passing to the other reasons of appeal, the second alleges error by the court in holding that Exhibit A did not authorize defendant to do all of the work necessary in the intended construction. The court did not so hold in terms, nor was such a holding necessary to sustain the judgment rendered. If it were granted that under the contract defendant might go ahead and do all the work pertaining to laying its mains, that does not negative the right of the plaintiff to be reimbursed for expenses incurred by it in connection with the construction carried on by defendant. The fourth reason of appeal assigns error of the court in holding that defendant agreed to guarantee payment for work done and materials furnished to the contracting company under an independent contract with the latter. The court did not so hold, but on the contrary found a

request to plaintiff to undertake the work done by it by defendant's agent other than the contracting company.

The sixth reason of appeal assigns error in the trial court's holding that plaintiff might recover for work done and materials furnished which did not directly arise under the contract. The court did not so hold.

The third and fifth reasons of appeal as given in full in the statement of facts, appropriately raise the real question at issue in the case, that is, stated briefly, do the terms of Exhibit A obligate the defendant to pay for the work done and materials furnished in the way and under the circumstances detailed in the finding.

The contract, Exhibit A, is one of indemnity. Its operative words in that respect are to "indemnify and save harmless," and has regard to future occurrences. It is entirely unnecessary to indulge in disquisition upon the various meanings of the word indemnify. The word is used in various connections and with a significance to be determined by the context of the instrument in which it occurs taken in connection with the objects to be secured thereby, and the circumstances surrounding the transaction. Well recognized meanings of the word are to "reimburse" or to "make good," contemplating the future payment of money in certain contingencies. Reviewing the contract between the parties, whereby the defendant was given license to extend its mains underneath the roadbed of plaintiff's railway, we see that, among other matters, provision is made for the maintenance of the pipe-line in good repair without leakage, that the pipes shall be laid in a workmanlike manner after notice to plaintiff and under supervision of the plaintiff, that plaintiff shall be saved harmless against all claims, damages and expenses to which it may be subjected by reason of the existence of pipes on the premises, "or by reason of

any work done in connection with the construction or maintenance of said pipes," or due to any omissions by defendant with respect to the maintenance or use of the pipes. By means of the above provisions it is clear that there is some work contemplated to be done by plaintiff entailing expense, since the operations were to be supervised by some agent of the plaintiff, and there is no reason to infer that this supervision was to be furnished gratuitously. Defendant's brief admits that under the terms of this contract circumstances might arise under which it would be necessary and proper for plaintiff to incur expense to protect its tracks. That is to say, that if, as the work progressed, plaintiff's inspector saw that the defendant was doing its work in a careless way, so that danger might arise to plaintiff's tracks, this functionary might step in and cause any work necessary to safeguard the situation to be performed by plaintiff's workmen using plaintiff's appliances. It was not necessary under the contract that plaintiff should sit by and see imperfect support given to its tracks by defendant, notwithstanding the warning of its inspector, wait and see an accident occur, and then sue defendant upon another provision of the contract. Such expense would undoubtedly be a charge and expense for which plaintiff might recover under the license contract, Exhibit A. Now the trial court has found that the work of inspection, as well as the work of supporting the tracks, was in immediate charge of its bridge inspector. The court further finds that this work of supporting and protecting the tracks, done by the plaintiff, could very properly be done under strict supervision by competent and experienced railroad men, and could best be performed by plaintiff, who had at its disposal experienced labor and proper materials available for such an undertaking. In such a situation the defendant might well request plaintiff

to proceed and do the work necessary for protecting itself, on the ground that it would be done in the most skillful way, and with the incidental advantage that plaintiff would not then be in a position to hold defendant for any damage accruing from defective work, if any accident did actually occur, since in that event the fault would have been that of the plaintiff.

As we have just said, it is conceded that plaintiff might have intervened on its own motion and done just this work, and sued for the expense incurred under the license contract. In such an action it would stand to sustain the burden of proving its intervention necessary. But in our view of the instant case, the request by defendant to plaintiff to undertake this work in legal effect does away with the establishment of a case of actual and evident necessity, and brings the transaction fully within the provisions of Exhibit A, and in case of nonpayment establishes a right of action for the expense incurred arising directly out of these provisions.

We now take up the further transactions between the parties, relating to plaintiff's efforts to secure payment of its claim and the attitude of defendant in that connection, as to which defendant claims that it was foreclosed by the decision on demurrer from establishing by proof the allegations of that portion of its answer to which the demurrer was addressed. We find as we have said, that in fact these matters were gone into at the trial, as properly available under the denials in the first portion of the answer.

Defendant contends that it had no timely notice of the plaintiff's demand. It appears from the finding of the trial court, summarized in the statement of facts hereinbefore made, taken in connection with certain exhibits made part thereof, that defendant had notice

of the nature and extent of plaintiff's claim, and that the attempt to collect from the contractor was at defendant's request. The endorsement upon the bill rendered' the latter, "Originally rendered City of Hartford, charged you at their request," is especially significant.

The trial court further finds that the defendant had notice of plaintiff's claim, before the former settled with the contractor. It would therefore appear that there was no waiver and no estoppel, preventing plaintiff from recovery in the present action, and that the trial court held correctly in its conclusion that the submission of the bills by plaintiff to the contractor at request of defendant did not absolve the latter from liability.

There is no error.

In this opinion the other judges concurred.