## Morris Spirt *vs.* Isaac N. Albert.

Third Judicial District, New Haven, January Term, 1929.

Wheeler, C. J., Haines, Banks, Brown and John Rufus Booth, Js.

Argued January 17th—decided June 13th, 1929.

*James M. Lynch* and *J. Gregory Lynch,* with whom was *Perry Graicerstein,* for the appellant (plaintiff).

*William B. Fitzgerald,* with whom, on the brief, was *Edward B. Reiley,* for the appellee (defendant).

BROWN, J.   The court's finding which stands unchallenged upon this appeal, discloses that South Main Street in Waterbury is one block east of and parallel to Canal Street, both running in a northerly and southerly direction.   For several years prior to April 15th, 1919, the defendant owned three parcels of land fronting on the west side of South Main Street completely covered by buildings used by the defendant in his retail furniture business and with no rear entrance, so that furniture could be brought into or taken out of the defendant's store only by the South Main Street entrance.   On April 17th, 1919, the plaintiff acquired two parcels of land lying generally west of the defendant's land and fronting on the east side of Canal Street, and a third parcel fronting on the west side of South Main Street, located a short distance north of the defendant's land, which included title to a passway one hundred and seventy-four feet in length from the street to the rear of the plaintiff's Canal Street property, and also included a parcel in the rear of land of a third party fronting on South Main Street, bounded northerly by the passway fifty-eight and one half feet, and southerly in part by land of the defendant.   This tract, which had no street frontage and for which the passway afforded the sole means of access, the plaintiff, by Exhibit D, deeded to the defendant December 2d, 1922. December 31st, 1923, the defendant acquired a parcel known as the Auditorium Property next south of his land fronting on South Main Street, having an entrance thirty-two feet wide thereon.

For nearly twenty years prior to December 2d, 1922, the plaintiff and defendant had been close friends,

visiting each other very frequently, and during the last two years of this period the plaintiff often urged the defendant to purchase the land described in Exhibit D, stating that if the defendant bought this of him, he would include in the deed a right of way over the entire passway between the rear of the defendant's land and South Main Street and that the right of way could be used to serve the property already owned by the defendant on South Main Street, and also the Auditorium Property, if the defendant should thereafter acquire it. On such occasions the parties walked over the land at the plaintiff's suggestion, when the plaintiff pointed out to the defendant the advantages of owning the Auditorium Property, how it could be used, where the defendant should locate a loading platform in the rear of his buildings on South Main Street, how trucks could serve this platform via the passway and the land described in Exhibit D, and how the old wooden shed located between the two brick buildings on this tract should be removed to permit access by the trucks to the loading platform. This tract was of little value without a right of way to serve the defendant's other property on South Main Street and the Auditorium Property.

Relying upon the plaintiff's honesty and the truth of these statements and his promise to grant a right of way of the extent stated, and because thereof, about four weeks prior to December 2d, 1922, the defendant agreed to purchase the tract described in Exhibit D and paid $100 to the plaintiff on account of the purchase price thereof provided that the passway rights were to be included in the deed, so that it would serve all of the defendant's property on South Main Street and also the Auditorium Property if purchased. The next day on the land the plaintiff reiterated to the defendant his observations as to the use of the

passway by trucks to and from the defendant's land, the location of the loading platform, and the demolition of the wooden shed to give access thereto, and thereupon the defendant had the shed torn down and the plaintiff took some of the lumber therefrom to use elsewhere. And shortly after, under the plaintiff's supervision, the defendant began the erection of the loading platform at the rear of his property fronting on South Main Street. Some two days after the shed was so torn down the defendant began to use the passway to serve the land described in Exhibit D, and thence across that, the loading platform located as above described. This user was at the plaintiff's suggestion and was continued with his knowledge and without objection until the latter part of February, 1924, he being present to observe it almost daily in the defendant's store and on the land at the rear thereof.

Shortly after the defendant purchased the land described in Exhibit D from the plaintiff, at his suggestion and with his knowledge, the defendant had the two store entrances to his property on South Main Street changed by substituting a single entrance in the middle of the front at an expense of $22,000, which no longer permitted the receipt of large crates of furniture by this entrance, and these changes were made to adapt the stores to use with the passway from the rear which the defendant was relying upon.

Between December 2d, 1922, and December 31st, 1923, the plaintiff repeatedly urged the defendant to purchase the Auditorium Property, often going upon the land to point out to the defendant the use which could be made thereof and of the passway in connection therewith. On the latter date, the defendant relying upon these representations, purchased this property for $42,000 and forthwith closed the entrance

thereof on South Main Street, made other alterations therein at a further cost of $48,000 converting it into stores, to use in connection with his furniture business with the right of way between the rear thereof and South Main Street over the land described in Exhibit D and the passway on the plaintiff's land. Without such right of way this property was of much less value.

After receiving from the defendant the $100 payment on account of the purchase price of the land described in Exhibit D, the plaintiff suggested that he would have his attorney prepare the papers, and that the defendant, who while able to write his name, had little or no education and could not read English, need employ no attorney. The plaintiff had a deed of the land so prepared and on December 2d, 1922, took the defendant and one Hutchinson to his attorney's office where the deed was read to Hutchinson in the hearing of the parties, whereupon Hutchinson told the attorney that it did not contain passway rights, and informed him that it should contain such rights which would serve the land described in Exhibit D, all the land the defendant then owned on South Main Street, and the Auditorium Property if it should be thereafter acquired by the defendant. Both parties heard Hutchinson's statement, and the plaintiff then remarked to the defendant in the Jewish language which both understood that that was so, that that was their agreement, and that it would be included in the deed. Thereupon the attorney inserted in the deed Exhibit D the last part of the description: "together with the right to pass and repass." In answer to the defendant's inquiry the plaintiff assured him that what had been so inserted included passway rights to serve not only the land described in the deed but all of the defendant's property on South Main

Street and the Auditorium Property as well, whereupon the defendant paid the plaintiff the $10,000 agreed consideration.

Because of the representations of the plaintiff, and because of the mutual mistake of both the plaintiff and defendant, the deed Exhibit D failed to express what both the plaintiff and defendant intended in that it failed to state that the right of passway which it conveyed was to serve the three parcels of land on South Main Street already owned by the defendant, and the Auditorium Property in the event that the defendant should thereafter acquire it, in addition to the land described in Exhibit D. At the time of the execution of the deed, both the plaintiff and defendant intended that it should contain a grant of all of these passway rights, and at that time and for nearly a year thereafter both believed that the deed as executed did in fact contain a grant of such passway rights. After the defendant had completed his alterations of the Auditorium Property and had started to use it in connection with his furniture business, the plaintiff said to the defendant that he had discovered that the deed Exhibit D which he had given the defendant was "not right," and for the first time objected to the defendant's use of said passway. He thereupon demanded of the defendant the sum of $15,000 for a right of way to serve the defendant's property on South Main Street and the Auditorium Property, whereupon the defendant demanded of him a deed which would conform to their agreement, including such passway rights. This the plaintiff refused to give unless the further sum of $15,000 was paid.

The defendant in his use of the passway after December 2d, 1922, on no occasion blocked it up or interfered in any way with the use thereof by the

tenants of the plaintiff's buildings fronting on Canal Street, or by anyone else having right therein. The defendant never used the passway to transport furniture directly either to or from his original store buildings on South Main Street or the building on the Auditorium Property, but always via one or both of the brick buildings on the land described in Exhibit D where the uncrating and retouching or polishing were respectively attended to.

The facts so established by the court's finding, in so far as the vital fact of mutual mistake is concerned, which are in conformity with the express finding of the jury in response to the two interrogatories submitted by the court, that the deed as executed contained a mutual mistake in that it failed to give passway rights to the three parcels of land on South Main Street already owned by the defendant, and further to all the property adjacent to land being conveyed in the deed which might be otherwise acquired by him, particularly the Auditorium Property,—disclose a situation charged with the most impelling equities in the defendant's favor. While the plaintiff does not attempt to gainsay this, the burden of his appeal relates to claimed errors of adjective law with respect to matters of pleading and procedure. Upon such a record the plaintiff should not prevail upon his appeal unless the inflexible rules of adjective law require it.

The first reason of appeal is the claimed error of the court in overruling the plaintiff's demurrer to the cross-complaint. The demurrer, as the context of its several paragraphs clearly reveals, attacks the allegations of the cross-complaint as insufficient to set forth a cause of action for the plaintiff's fraud, and attacks the prayer for relief thereof, seeking reformation, as improperly predicated upon a complaint for fraud. In so far as the latter feature of the demurrer is con-

cerned, the record discloses that during the trial, in response to claim made by the plaintiff, the court ruled that "the allegations of fraud would not support the claim for reformation." Thereupon the disposition of this feature of the demurrer, while technically remaining a subject of appeal, so ceased to be of importance that this court will not review the action of the trial court in overruling it. *New York, N. H. & H. R. Co.* v. *Water Commissioners,* 102 Conn. 488, 497, 129 Atl. 384; *O'Brien* v. *Doolittle,* 91 Conn. 354, 355, 99 Atl. 1055; *Thomas' Appeal,* 85 Conn. 50, 51, 81 Atl. 792.

The court's ruling upon the demurrer to the cross-complaint itself was correct. The mere fact that the cross-complaint contains certain allegations of representations made by the plaintiff, believed and acted upon by the defendant, and of "fraud" by the plaintiff, does not of itself limit the cross-complaint exclusively to a cause of action for fraud nor necessarily vitiate it as one for mutual mistake, as the demurrer and the plaintiff's argument in support thereof would seem to suggest. On the contrary, a careful study of the cross-complaint discloses that it was apparently drawn with considerable care to primarily allege a cause of action based upon a mistake upon the part of the defendant coupled with fraud or inequitable conduct upon the part of the plaintiff. It so sets forth a valid cause of action for mistake, since the law is clearly established that where, unknown to one of the parties, an instrument contains a mistake rendering it at variance with the prior understanding and agreement of the parties, and the other party learns of this mistake at the time of the execution of the instrument and later seeks to take advantage of it, equity will reform the instrument so as to make it conform to the prior understanding. 10 R.C.L. 301,

§ 44; 34 Cyc. 920, note 7; Bispham's Equity (7th Ed.) 292, § 191; *Essex* v. *Day*, 52 Conn. 483, 495-497; *Hand* v. *Cox*, 164 Ala. 348, 51 So. 519; *Simpson Plumbing & Heating Co.* v. *Geschke*, 76 N.J. Eq. 475, 79 Atl. 427, affirmed, 78 N.J. Eq. 303, 81 Atl. 1133; *In re Jenkins*, 201 Iowa, 423, 205 N.W. 772. Or as the principle is expressed in the headnote of *Essex* v. *Day, supra:* "While it is a general rule that a mistake, to be corrected by a court of equity, must be a mutual one, and must have operated to induce the contract, yet this rule does not apply to a case where the other party knew of the mistake and is seeking to take an unfair advantage of it." Paragraphs five, six, seven, eight, ten and eleven of the cross-complaint set forth the mutual understanding of the parties prior to the execution of the deed; paragraph thirteen, the failure of the deed as executed to compass this understanding; and this, with the subsequent paragraphs, the plaintiff's fraud and attempt to take inequitable advantage of the defendant's mistake in believing what was omitted was in fact in the deed. Therefore the plaintiff's demurrer to the cross-complaint was properly overruled.

Our determination upon the second reason of appeal makes patent a further ground justifying the court's overruling of this demurrer. The more vital question here raised is as to whether the cross-complaint contained sufficient allegations of mutual mistake to warrant the submission of this issue to the jury upon the interrogatories as they were propounded by the court. Obviously the cross-complaint is far from a model of one for the reformation of a deed upon the ground of mutual mistake. But the bill is to "be liberally construed . . . to give effect to any real equity involved in the case" (10 R.C.L. 426, § 185), and an analysis of its allegations discloses that while the

mutual mistake might better have been alleged with greater directness and clarity (Practice Book, p. 408, Form 194, par. 2), nevertheless the essential facts disclosing it are sufficiently set forth. Paragraph seven states the plaintiff's expressed intention before the deed was executed to include the rights of way as claimed by the defendant; paragraphs ten and fifteen respectively, the defendant's belief in and intention of their being so included at the time of its execution and thereafter; paragraphs eleven and twenty read together, the mutual intention of the parties at the execution of the deed to include them therein as had previously been agreed between them; paragraph thirteen, the omission thereof from the deed as executed; paragraph eighteen, the defendant's discovery of this mistake of omission; and paragraph twenty, the defendant's demand forthwith upon the plaintiff to rectify it and his refusal so to do. The reformation asked for in the second prayer for relief was at least tentative notice to the plaintiff of these allegations so relied upon as setting forth a mutual mistake, for it sufficiently alleged not only a cause of action for the mistake of a variance in the deed from the prior agreement of the parties, known to the plaintiff at the time the deed was executed, but unknown to the defendant, which the plaintiff later tried to take advantage of, but also a cause of action for mutual mistake, and both of these were properly contained in this cross-complaint as drawn. *Craft Refrigerating Machine Co.* v. *Quinnipiac Brewing Co.*, 63 Conn. 551, 560, 29 Atl. 76.

While we have not had occasion before to pass upon the validity of such a complaint, a number of decisions by courts of other jurisdictions are predicated upon complaints so similarly deficient as to be of value as confirming the foregoing conclusion. In one

such case the court say: "It is true that the word 'mistake' nowhere appears in the complaint; but if the essential facts have been alleged it was not necessary that plaintiffs should have characterized them. It is the *facts,* and not the pleader's conclusions, from which the chancellor is to draw the conclusion that there was a mistake in which both parties participated, or that there was a mistake on the part of one known or suspected by the other. . . . In other words, it is sufficient if the facts alleged, or the inference to be drawn from them, by fair intendment show . . . mistake." *Robertson* v. *Melville,* 60 Cal. App. 354, 358, 212 Pac. 723, 725. In another the court say: "The pleading of the plaintiff is inartificial in its statements, but it avers the existence of facts substantially as they afterwards appeared in evidence. There is no specific allegation of a mistake of fact, but it avers that which shows that the parties were mistaken as to the effect of the language which they used, and this is an averment of matter upon which a reformation of a contract may be based." *Maher* v. *Hibernia Ins. Co.,* 67 N.Y. 283, 290. Other cases to the same effect are: *Seegelken* v. *Corey,* 93 Cal. 92, 28 Pac. 949; *Stark* v. *Suttle,* 181 Ky. 646, 205 S.W. 673; and *Carr* v. *Burris,* 148 Ky. 232, 146 S.W. 424. The cross-complaint sufficiently alleged a cause of action on the ground of mutual mistake, the pleadings presented an issue thereon, and the question was properly submitted to the jury for its determination thereof.

The cross-complaint being sufficient unamended, the allowance of the amendment could not and did not prejudice the plaintiff. In so far as the allowance of the amendment is concerned, it may further be observed that, as the court's memorandum thereon states, "the case was tried out on the theory of mutual mistake as is shown by the record," and "it is not claimed

. . . that any surprise or any change affecting the merits of the case as tried out are presented by this amendment, and it is clear that no such surprise or change has occurred." The amendment was allowed before judgment. The allowance at this time, which is the ground of the third reason of appeal, unless an abuse of discretion by the court, was not erroneous. In view of the fact that the case was tried on the theory of mutual mistake and no actual or possible prejudice to the defendant appears and the jury's answers to both interrogatories related to the issue of mutual mistake we cannot upon the record hold the court did abuse its discretion.

As to the fourth reason of appeal, that the court erred in reforming the deed to include therein a right of way to serve the previously owned land of the defendant and the Auditorium tract afterward acquired by him, as well as to the tract described in Exhibit D, because the contract is "too indefinite and vague as to the extent of the property to be served" to warrant it, it is sufficient to point out that the record does not disclose that this "question was distinctly raised at the trial," as § 5837 of the General Statutes justly requires shall so appear to entitle the defendant to a review thereof upon appeal. Resort to reasons of appeal so predicated—particularly where, as here, the equities upon the merits predominate so strongly in the appellee's favor—is not to be encouraged by a discussion of the merits thereof by this court. *Draus* v. *International Silver Co.,* 105 Conn. 415, 418, 135 Atl. 437; *Fidelity & Casualty Co.* v. *Palmer,* 91 Conn. 410, 418, 99 Atl. 1052; *Hodges* v. *Kowing,* 58 Conn. 12, 19, 18 Atl. 979.

The ruling of the court in excluding the question propounded by the plaintiff to the attorney who prepared the deed Exhibit D and acted as the plain-

tiff's attorney in this action until after the defendant's cross-complaint was filed, which is the error alleged in the fifth reason of appeal, must be tested in the light of the purpose for which the question was claimed as disclosed by the record, rather than by that suggested in the considerably broader claim of the plaintiff's brief. After the witness, called by the plaintiff, had testified in chief to the effect that up to February 27th, 1924, when he instituted this suit for the plaintiff, he had heard nothing from the defendant or from anyone representing him of any claim to passway rights beyond those described in Exhibit D as executed, a further question was asked of him by the plaintiff, phrased in two different ways, calculated to elicit the response that the witness first learned of the defendant's claim that he had a right to serve his Auditorium Property by means of the passway in question, upon the occasion of the filing of the cross-complaint. That the scope of the question was limited to such claims made by the defendant subsequent to the bringing of the plaintiff's action is obvious from the colloquy in the record. To the inquiry by defendant's counsel as to what was the importance of what the witness learned as attorney for the plaintiff, the plaintiff's trial counsel replied: "Of some value, if your honor please. If the lawyers are dodging in a case, and no claim is made for a long time, it is some evidence." Whereupon the court observed: "No, I will sustain the objection. If it had to do with the time of making the deed or close thereto, it would be different. But after Mr. Reeves brought the suit and was the attorney in the litigation, I don't think it is admissible." The exception allowed to this ruling is the basis of this reason of appeal. The court's ruling was correct. The plaintiff's contention upon his brief that the evidence was admissible to contradict the

testimony of the defendant's witness Hutchinson to the effect that at the time the deed was executed Mr. Reeves was instructed to insert therein a description of the additional rights in the passway as claimed by the defendant, is without merit. In the first place the witness had already in effect denied this as above narrated, and in the second place, as already shown, the evidence was never claimed for this purpose. Under the claim made it was clearly immaterial. Not only does the unchallenged finding (paragraphs forty-one and forty-two) disclose that upon the plaintiff's first objection to the defendant's use of the passway to serve his land beyond that described in Exhibit D, the defendant demanded a grant of these further rights which the plaintiff refused unless $15,000 additional consideration was paid, but furthermore upon the existing facts there was no duty upon the defendant to assert his claim prior to the filing of his cross-complaint claiming reformation. *Snelling* v. *Merritt,* 85 Conn. 83, 91, 81 Atl. 1039.

By his sixth and last reason of appeal the plaintiff complains that the court erred in not charging the jury not to consider the allegations of fraud or fraudulent representations of the cross-complaint in reaching a conclusion upon the question of mutual mistake. The charge given by the court as tested by the pleadings at least, was more favorable to the plaintiff than he was entitled to. As already stated in this opinion, the cross-complaint alleged not only a cause of action for mutual mistake, but one based upon a mistake upon the part of the defendant coupled with fraud or inequitable conduct upon the part of the plaintiff. The question as to whether or not the latter cause of action was established upon the evidence was not submitted to the jury for its determination. If the court erred in this, it was in the plaintiff's favor.

The case was submitted to the jury upon the simple issue of mutual mistake, upon which these allegations of fraud were not material. The charge, however, was clear, direct, and limited to this single issue, and not only did the court at its conclusion expressly invite suggestions in amplification from counsel who remained silent, but further the only criticism of the charge upon this appeal is the one under discussion. As to it, two significant facts appear; first, the jury was charged as follows: "a cause of action for reformation on the ground of mutual mistake requires no allegation of fraud"; second, the plaintiff, though well aware that the cross-complaint contained these allegations and what issue was to be submitted to the jury upon the pleadings, filed no request to charge upon this subject. In the light of this situation it cannot be said that the charge discloses any reversible error. *Manning Mfg. Co.* v. *Merriman,* 106 Conn. 95, 98, 136 Atl. 867; *Blake* v. *Waterbury,* 105 Conn. 482, 484, 136 Atl. 95; *Fritz* v. *Gaudet,* 101 Conn. 52, 53, 124 Atl. 841.

There is no error.

In this opinion the other judges concurred, except JOHN RUFUS BOOTH, J., who dissented.