ALBERT MEDLYN v. NICHOLAS ANANIEFF.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 5—decided December 14, 1939.

*Raphael Korff*, with whom, on the brief, was *Frederick E. Morgan,* for the appellant (plaintiff).

*William Reeves,* for the appellee (garnishee The First National Bank & Trust Company).

AVERY, J. The essential facts of this case as they appear in the finding are these: The plaintiff made a loan to the defendant, Ananieff, secured by collateral consisting of a stamp collection. These parties rented a safe deposit box from the First National Bank & Trust Company of Bridgeport. The contract under which the box was rented was signed by both Medlyn and Ananieff and witnessed, and provided that, "(We) the undersigned hereby rent and agree to hold Safe Deposit Box No. 540 in the First National Bank & Trust Co., Bridgeport, Conn." They agreed to conform to the rules and regulations of the bank, and the contract further provided that the signers had rented the box "as joint tenants in the vaults" and "agree that in the event of the death of either one of us the survivor is or the survivors are to have exclusive access thereto, with the right to surrender for both or for all." The plaintiff claims that the stamp collection was placed in the box at the time it was rented. Thereafter, Ananieff having defaulted on his loan, the plaintiff brought suit against him, and the bank was named as garnishee, and a copy of the process was left with it. One of its officers disclosed to the sheriff making the service that $1.70 was owing the defendant Ananieff by the bank. The bank had no knowledge of the contents of the safe deposit box, and at the time of service the sheriff did not attempt to take possession of its contents. The plaintiff obtained judgment and took out execution. The sheriff then made demand on the bank for the contents of the safe deposit box, but made no attempt to seize it or take possession of its contents. The bank paid the sheriff seventy cents, which was the balance owing Ananieff

from it, less a prior lien of one dollar deducted. There-
after, the writ of scire facias was taken out against the
bank as garnishee and the bank appeared in court and
disclosed, in addition to the facts enumerated, that
its method of operation was this: Upon satisfactory
identification, a steel door is opened in the bank vault
and the box holder admitted to the vault where it
becomes necessary for an employee of the bank to
use its master key to release the lock upon the box
holder's individual box, which in turn is opened by the
box holder's key. Without the box holder's key and
the master key of the bank the box cannot be opened
nor could the box holder get into the vault where the
boxes are kept until admitted by an employee of the
bank through the steel door of the vault.

The question involved is whether the bank was sub-
ject to garnishment as to the contents of the safe de-
posit box. Our statute of foreign attachment, set
forth in the footnote,[1] originated in an act passed in
May, 1726, applicable to absent or absconding debtors.

[1] Sec. 5763. PROCESS OF FOREIGN ATTACHMENT. When the effects of
the defendant in any civil action in which a judgment or decree for
the payment of money may be rendered are concealed in the hands
of his agent or trustee so that they cannot be found or attached, or
when a debt is due from any person to such defendant, or when any
debt, legacy or distributive share is or may become due to such
defendant from the estate of any deceased person or insolvent
debtor, the plaintiff may insert in his writ a direction to the officer
to leave a true and attested copy thereof and of the accompanying
complaint, at least twelve days before the session of the court to
which it is returnable, with such agent, trustee or debtor of the de-
fendant, or, as the case may be, with the executor, administrator or
trustee of such estate, or at the usual place of abode of such garni-
shee; and from the time of leaving such copy all the effects of the
defendant in the hands of any such garnishee, and any debt due
from any such garnishee to the defendant, and any debt, legacy
or distributive share, due or that may become due to him from such
executor, administrator or trustee in insolvency, not exempt from
execution, shall be secured in the hands of such garnishee to pay
such judgment as the plaintiff may recover.

7 Col. Rec. 28. It provided that a creditor might attach and take on execution the lands and effects of the debtor "in whose hands or possession soever the same are or may be found" and the person in whose hands they were was required to "expose" them for that purpose. It then went on to provide that if no land, goods or effects were exposed to view and if it was found that there were such goods, they might be taken upon execution and that if the person holding them did not "discover, expose and subject" the property to execution he should be liable to satisfy the debt himself. It is evident that underlying the act was the thought that there was property of the debtor in the hands of someone else which the latter could "expose" to be taken on execution. *Sutherland* v. *Brown,* 85 Conn. 67, 73, 81 Atl. 1033. The history and development of the law are traced in *Hayes* v. *Weisman,* 97 Conn. 387, 394, 116 Atl. 878. The interpretation placed upon our statute makes it clear that it was intended to apply to property within the control of the garnishee.

The relationship between the institution renting safe deposit boxes in a vault and the box holder is one which the courts have hesitated to define with precision. In *National Safe Deposit Co.* v. *Stead,* 232 U. S. 58, 68, 34 Sup. Ct. 209, 212, Justice Lamar said: "Certainly the person who rented the box was not in actual possession of its contents. For the valuables were in a safe built into the company's vault and therefore in a sense 'under the protection of the house.' The owner could not obtain access to the box without being admitted to the vault, nor could he open the box without the use of the company's master key. Both in law, and by the express provisions of the contract, the company stood in such relation to the property as to make it liable if, during the life time of the

owner, it negligently permitted unauthorized persons to remove the contents, even though it be under color of legal process. . . . After his death, it would be likewise liable if it permitted unauthorized persons, be they heirs, legal representatives, or joint-renters, to take the property of the decedent." See also *Carples* v. *Cumberland Coal & Iron Co.,* 240 N. Y. 187, 192, 148 N. E. 185, 39 A. L. R. 1211, 1214, where the Court of Appeals of New York stated that "the customer's control and possession of his box is not much different than would be the control and possession by a tenant of property in an office which he had rented from the owner of the building." In an early case in Massachusetts, *Bottom* v. *Clarke,* 61 Mass. (7 Cush.) 487, 489, it was held that where a small locked trunk was deposited in the vault of a bank for safe keeping with the consent of its officers, who were ignorant of its contents and had no authority to open the trunk and ascertain the contents, neither the bank nor its officers were subject to foreign attachment under trustee process as to the trunk or its contents. In a later case, however, *Adams* v. *Scott,* 104 Mass. 164, the court, distinguishing the earlier case, held that money of the defendant in the possession of an express company delivered to it in a sealed package was subject to garnishment. In *Dupont* v. *Moore,* 86 N. H. 254, 166 Atl. 417, the question whether the contents of a safe deposit box could be reached by garnishee process against the bank is exhaustively discussed and the Supreme Court of New Hampshire came to the conclusion that the contents of a safe deposit box could not be reached by trustee process in that state. The situation is expressed by that court in this language (p. 262): "The statute contemplates that the trustee is in a position to turn over to the receiver the evi-

dence of the choses in action kept by it for the defendant."

It is recognized that in a number of jurisdictions courts have held that the contents of boxes could be reached by creditors. The cases on the subject are collected in notes, 11 A. L. R. 225, 19 A. L. R. 863, 39 A. L. R. 1215. In *Tillinghast* v. *Johnson,* 34 R. I. 136, 82 Atl. 788, 41 L. R. A. (N. S.) 764, it was held that the contents of a safe deposit box might be reached under the statutes of Rhode Island by a court order directing the safe deposit company to be examined as a witness and the order might even require an inspection of the contents of the box. A similar procedure is recognized in Washington, *Trowbridge* v. *Spinning,* 23 Wash. 48, 54 L. R. A. 204; in Pennsylvania, *Trainer* v. *Saunders,* 270 Pa. St. 451, 113 Atl. 681; in Utah, *West Cache Sugar Co.* v. *Hendrickson,* 56 Utah 327, 190 Pac. 946, 11 A. L. R. 216. In all of these cases, the proceeding was based upon the interpretation placed by the courts upon the statutes, and the rights of the box holder and of the bank were protected by the necessity of obtaining an order of court to obtain the opening or inspection of the contents of the box. Our statutes make no provision for such procedure and, in view of the interpretation which has been placed upon § 5763 by this court, we are constrained to hold that it does not authorize the garnishment of the contents of a safe deposit box under the circumstances disclosed in this record as effects of the defendant concealed in the hands of the bank.

If it develops that opportunities afforded for the fraudulent concealment or the withholding by a debtor of access by creditors of assets through utilization of a safe deposit box are such that public policy dictates that attachable property so deposited should be rendered legally accessible, it can best be effectuated by

statutory provision for a court order, to that end, affording proper protection of rights of both bank and box holder, including provision for opening the box with as little damage as possible and indemnifying the bank for its expense and damage, and adequately protecting the box holder as to contents thereof other than property legally subject to attachment or execution.

There is no error.

In this opinion the other judges concurred.