LIONEL C. SIMPSON PLUMBING AND HEATING COMPANY

*v.*

EDWARD GESCHKE.

[Heard January 24th, 1910.   Determined January 25th, 1910.]

A contract embodied in a letter written by the complainant to the defendant in compliance with defendant's request purporting to contain a memorandum of the terms of an oral building contract between the parties, theretofore entered into between them, but which did not correctly embody the terms of the real contract owing to the mistake of the complainant, will be reformed, where it appeared that the defendant either did not observe the error in the writing, and hence the writing embodied a mistake on his part, or did observe the error in the writing and failed to disclose that fact to the complainant, under circumstances constituting such unconscientious or fraudulent conduct on his part as to entitle complainant to the relief of reformation.

On final hearing.   On pleadings and proofs.

*Mr. Howard L. Miller,* for the complainant.

*Mr. Ralph W. E. Donges,* for the defendant.

LEAMING, V. C. (orally).

I do not entertain the slightest doubt touching the facts in this case. It not infrequently happens that where testimony is in conflict I find considerable difficulty in arriving at a conclusion which is entirely satisfactory to me touching the facts concerning which the testimony is in conflict, but in this case I have no doubt whatever touching all that has transpired, notwithstanding the conflict in the testimony. The facts undoubtedly are that in July, 1907, Mr. Stuart, representing the complainant company, orally submitted to defendant, Geschke, a bid of $280 per house for this work, and that Mr. Geschke at that time told him the price was too high, and told him that he had received a bid from another party, which was considerably lower, so much lower that it represented in its difference what was equivalent to the cost of papering; Mr. Stuart then undoubtedly requested the right or privilege to revise his figures and submit another bid, and that request being acceded to, he returned to the house, which he represented, and went over the matter in detail with Mr. Simpson, the president of complainant company; the result of their joint examination of the details of the figures, on which the first bid had been based, was a determination to submit a second bid of $265 per house, and Mr. Stuart was authorized to make that bid in behalf of complainant company; he accordingly, on the same day, returned to defendant, Geschke, and told him that on a revision of the figures they had determined to make the bid $265 per house; Geschke said that that was satisfactory and accepted the bid and directed that the complainant company proceed with its work, and the work was accordingly begun under what was a parol contract between the parties, whereby the complainant company was to do this work and was to charge for it $265 per house. It is undoubtedly also a fact that subsequently, and after the work was in progress, Mr. Geschke asked that a statement be sent to him, in writing, containing a memorandum of the terms of the contract, in order that he could have possession of such a statement for his use, and, accordingly, the letter which is now in question, under date of July 25th, 1907, was written by complainant company to the defendant in compliance with defendant's request. That letter

unquestionably contains a mistake, which has arisen through the inadvertence of someone, probably of the typewriter, but it matters not through whose inadvertence; the letter contains the terms of $165 per house, instead of $265 per house as had at that time been agreed upon. Subsequently, a settlement was made between the parties under the assumption that $165 per house was the amount agreed upon, and the money was paid by defendant at that rate and a receipt given which was intended to be a receipt in full.

These are, to my mind, facts which are established by the testimony in this case so clearly, when all the circumstances are considered in connection with the testimony, that, as already stated, I entertain no doubt on the subject whatever.

The suit is to reform the written agreement which is embodied in the letter already referred to. Where the basis of reformation is that of mistake, the mistake must be a mutual mistake, but a reformation may also be had where there has been a mistake upon the part of one party and unconscientious conduct upon the part of the other in the nature of a concealment of the mistake. As already stated, the real contract between the parties, the contract which was not reduced to writing, was $265 per house. The letter which was intended to take the place of the parol contract and to be operative as a written contract, was not a new contract at all, for there had been no further negotiations or change of terms, but was intended as a writing to embody the terms of the fixed parol contract; neither of the parties had any purpose or expectation or design to accomplish by or embody in the writing anything different from that which had been orally agreed upon. That writing affords the conclusive evidence of the contract unless it is reformed, as that writing was adopted by the parties as embodying the terms of the real contract; it was sent out by the complainant company as its agreement; it was received by the defendant as embodying the terms of the agreement; it was acted upon by the parties in making their settlement, and was, in every sense, adopted by both of the parties as the written contract, or, rather, as a written contract correctly embodying the terms of the parol contract, whereas, in fact, it did not correctly embody the terms of the real contract

between the parties. So far, therefore, as the complainant is concerned, the written contract contained a mistake; so far as the defendant is concerned, if he did not observe the error in the writing, then the writing embodies a mistake upon his part; if the defendant did observe the error in the writing, then his failure to disclose that fact to complainant constituted such unconscientious or fraudulent conduct upon his part as to entitle complainant to the relief of reformation; so that, so far as the defendant is concerned, it is utterly immaterial whether he failed to notice the mistake, as did complainant, or whether he discovered the mistake and failed to communicate it.

In a court of law this written contract, which the proofs fully show has been adopted by the parties as the contract controlling their conduct, would be conclusive evidence of what the real agreement had been, and it is the special province of a court of equity to correct any errors or mistakes which have crept into a written agreement of this nature, and for that purpose the relief which is here sought, in the nature of reformation, is appropriately sought.

I do not know that it will be advantageous to comment upon the details of the testimony which lead me to these conclusions of fact, but I should say, I think, that the testimony of Mr. Stuart, and also of Mr. Simpson, has impressed me as testimony that cannot reasonably be doubted, whereas, on the other hand, the testimony of Mr. Geschke satisfies me, in many ways, that the testimony opposed to his statements must necessarily be true. There cannot be the slightest doubt that two bids were submitted, first, the higher bid of $280 per house, then, the second, the lower bid of $265 per house. Mr. Geschke did not question that fact when the matter was under negotiation between the parties for the purpose of adjustment; he then undoubtedly admitted and well remembered that he had turned down the higher bid and asked for a lower one, and even stated to Mr. Simpson that his statement made at that time, to the effect that he had received a bid from another party, was a "bluff;" there can be no doubt of that having transpired, and yet Mr. Geschke at this time denies it, and denies what it does not seem to me he can very well help remembering. I am satis-

fied also from the testimony of Mr. Stuart and Mr. Simpson that when this matter was first brought to the attention of Mr. Geschke for the purpose of adjustment, that Mr. Geschke did not seriously claim that $165 per house was the real contract amount; his claim at that time undoubtedly was that it was then too late for a mistake to be corrected, but as negotiations continued, he gradually grew to an attitude of greater resistance; first he said that he would abide by the decision of Mr. Stuart, and when Mr. Stuart's decision was against him he still further retracted, until finally a suit at law became necessary. His letter written to Mr. Simpson, in which he says that the more he thinks of it the more he is satisfied that $165 was the amount of the original bid, shows, I think, about the course of his mental process; originally he was not sure and did not undertake to assert that the original bid was $165; as time has gone on, he has grown more positive of the fact until, to-day, he is prepared to testify, and did testify, that when the bid was first offered he was "struck" with it—that is, that the bid as originally presented struck him as a peculiarly favorable bid, and was adopted by him at once. Now, I say, his testimony in that respect is not consistent with what was manifestly the course of the dealings between the parties; there were undoubtedly two bids, and the conditions undoubtedly arose just as the complainant and his witnesses have indicated, and all of the earmarks of the case so firmly confirm that view that I am entirely satisfied it is the only correct solution.

I will, therefore, advise a decree pursuant to the prayer of the bill. The action in the law court may now proceed to trial.