HOME OWNERS' LOAN CORPORATION vs.
EDWARD E. STEVENS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 6th—decided May 7th, 1935.

*Frederick C. Hesselmeyer,* with whom was *Thomas A. Grimes,* and, on the brief, *Samuel O. Clark, Jr.,* for the appellant (plaintiff).

*Louis Harris,* for the appellee (defendant).

HINMAN, J.   The facts found by the trial court include the following: In September, 1929, Ethel M. Smith purchased a house and lot in Stratford from the defendant, the purchase price being $4625, of which $570 was paid in cash and the balance by first mortgage, the principal to be reduced $200 yearly.   In the summer of 1932 Mrs. Smith was in default under the

mortgage to a considerable amount and the defendant agreed with her that he would attempt to sell the property for her. He placed it with a real-estate agent for sale at an asking price of $3900 and would have been willing to accept less, but the agent was unable to make a sale or obtain a reasonable offer. In September, 1933, the defendant suggested to Mrs. Smith that she apply to the plaintiff for a loan under the Home Owners' Loan Act of 1933, and she finally did so. At the request of the plaintiff and in accordance with its usual procedure, she forwarded to the defendant a form of mortgagee's consent to take bonds and the defendant filled out and signed it, agreeing to take plaintiff's bonds in the amount of $4200 for a release of his mortgage. Mrs. Smith filed this consent with the plaintiff and, in accordance with its usual procedure, the plaintiff caused the property to be appraised, the appraisal placing the value at $5283.35. The plaintiff was specifically prohibited by the act from loaning in excess of eighty per cent of the appraised value of the property; therefore, as taxes in excess of $200 were unpaid, the plaintiff was without authority to issue bonds to the defendant in the amount specified in his first consent. The defendant was thereupon requested to consent to accept a less amount, visited the plaintiff's office, and there signed a second consent whereby he agreed to accept bonds in the amount of $3950. In accordance with its usual procedure the plaintiff caused further appraisals to be made, as a result of which $5000 was the final appraisal value, permitting the plaintiff to make a maximum loan of $4000.

Procedure for the granting of the loan thereafter progressed until it was ready for closing on November 28th, 1933. A statement had been prepared by a closing clerk of the plaintiff, in which was inserted, by

mistake, as the amount to be paid the defendant, $4849.32, the full amount of the defendant's mortgage claim as shown by a statement which he had furnished the plaintiff, instead of the $3950 which he had agreed to accept. The circumstances attending and contributing to this error need not be detailed, as they involve no such negligence or other fault of the plaintiff as would affect its right to relief. 2 Pomeroy, Equity Jurisprudence, § 828; 21 C. J. p. 88; *Geremia* v. *Boyarsky*, 107 Conn. 387, 391, 140 Atl. 749. At the closing the plaintiff's attorney called the defendant's attention to the item of $4849.32 to be paid by the plaintiff to the defendant and inquired as to whether the figure was correct, and the defendant replied that it was. He "expressed no surprise or astonishment with regard to the amount he was to receive, asked no questions whatsoever regarding it, and made no comment thereon except to say that such amount was correct." The defendant delivered to the plaintiff a release of his mortgage and received from the plaintiff the original of an authorization for delivery of bonds in the amount of $4750 with interest coupons affixed having a value of $75.91 and a check for $23.41, aggregating $4849.32, or $899.32 in excess of the amount which he had agreed to accept. The mistake was first discovered by the plaintiff early in December and its representatives immediately visited the defendant, explained the mistake to him and requested and demanded that he return the authorization for correction, but the defendant refused to do so and still has it in his possession.

The trial court's conclusion that there was neither fraud nor mistake on the part of the defendant and its ruling that reformation could not be granted are the principal and determining points of this appeal.

Reformation is appropriate in cases of mutual mis-

take—that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction. 5 Pomeroy, Equity Jurisprudence (2d Ed.) § 2096; 53 C. J. p. 941; Amer. Law Institute Restatement, Contracts, Vol. 2, §§ 504, 505; *Enfield* v. *Hamilton,* 110 Conn. 319, 148 Atl. 353; *Mishiloff* v. *American Central Ins. Co.,* 102 Conn. 370, 128 Atl. 33; *Snelling* v. *Merritt,* 85 Conn. 83, 100, 81 Atl. 1039; *Bishop* v. *Clay F. & M. Ins. Co.,* 49 Conn. 167. An illustration of the limitations of this rule is afforded by the situation presented in *Geremia* v. *Boyarsky,* supra. As is pointed out in the Connecticut Annotations to the above-cited sections of the American Law Institute Restatement (p. 338) that was not a case in which reformation would be granted because, although the plaintiff had reason to know that a substantial error had been made in the amount of a bid submitted by the defendant, he did not know what the bid would have been had there been no mistake and there was no mistake in reducing to written form an agreement previously made.

The facts of the instant case do not disclose such mutual mistake as to make the rule applicable, but reformation is also available in equity when the instrument does not express the true intent of the parties owing to mistake of one party coupled with fraud, actual or constructive, or inequitable conduct on the part of the other. 5 Pomeroy, Equity Jurisprudence (2d Ed.) § 2097; 53 C. J. p. 949; 10 R. C. L. 301; *Enfield* v. *Hamilton,* supra, p. 327. Fraud, for the purposes of this rule, includes not only misrepresentation known to be such, but also concealment or nondisclosure by a party who knows that the other party is acting under a mistake as to material facts. Amer.

Law Institute Restatement, Contracts, Vol. 2, §§ 471, 472. "Where, unknown to one of the parties, an instrument contains a mistake rendering it at variance with the prior understanding and agreement of the parties, and the other party learns of this mistake at the time of the execution of the instrument and later seeks to take advantage of it, equity will reform the instrument so as to make it conform to the prior understanding." *Spirt* v. *Albert*, 109 Conn. 292, 300, 146 Atl. 717; *In re Estate of Jenkins*, 201 Iowa, 423, 205 N. W. 772. In *Essex* v. *Day*, 52 Conn. 483, 496, examples illustrative of inequitable conduct are cited, as follows: "A grantor by mistake embraces in his deed a parcel of land that neither party intended to have conveyed. The grantee sees his mistake, but does not call the attention of the grantor to it, and afterwards claims the parcel thus accidentally conveyed. Or a person offers a reward of $100 for the detection and arrest of a burglar, but by mistake and without his notice it is printed $1,000. A man who knows of the mistake arrests the burglar and claims the $1,000. In each of these cases the error is not mutual, but wholly on the one side. What is there on the other? Not mistake, but fraud. That fraud can never stand for a moment in a court of equity. But suppose the case to be one where, instead of actual fraud, there is merely such knowledge, actual or imputed by the law, as makes it inequitable for the purchaser to retain his advantage. The court will deal as summarily with that inequitable position of the party, as in the other case with his fraud." In that case bonds issued by the plaintiff town were corrected by insertion of an option to pay in ten years, omitted by mistake, the defendant holder having full knowledge of the mistake and seeking to take what was held to be unjust advantage of it.

In *Retan* v. *Clark,* 220 Mich. 493, 190 N. W. 244, vendors, by mistake, left out of a land contract an agreed provision that, as part of the consideration, unpaid instalments of a paving tax were to be paid by the vendees. The vendees noticed and concealed the omission and attempted to take advantage of it; this was held to be such inequitable conduct as to afford ground for reformation. *Welles* v. *Yates,* 44 N. Y. 525, was similar in facts and result. In *Wainwright* v. *Dunseath,* 46 Nev. 361, 211 Pac. 1104, concealment by the grantee of an error, known to him, limiting a reserved easement to use of the grantor only, the agreement being that it should also run to his successors and assigns, was held to warrant reformation. In *Atkinson* v. *Darling,* 107 Kan. 229, 191 Pac. 486, it was ruled (p. 231) that if the defendant noticed the mistake in a lease at the time it was executed and purposely or thoughtlessly kept silent about it, "the want of mutuality in the matter of the mistake would not stay the hand of a court of equity to correct the writing, as the attitude of the defendant in such case would be treated as a constructive fraud on his part." See also *Crookston Improvement Co.* v. *Marshall,* 57 Minn. 333, 59 N. W. 294; *Keister* v. *Myers,* 115 Ind. 312, 17 N. E. 161. In *Simpson Plumbing & Heating Co.* v. *Geschke,* 76 N. J. Eq. 475, 79 Atl. 427, affirmed 78 N. J. Eq. 306, 81 Atl. 1133, a representative of the complainant submitted to the defendant and the latter accepted an oral bid to do certain work at $265 per house. Later the defendant requested a memorandum in writing and in this the terms were mistakenly stated as $165 per house. It was held (p. 478) that if the defendant observed the error in the writing his failure to disclose it to the complainant and his attempt to take advantage of it "constituted such unconscientious or fraudulent con-

duct upon his part as to entitle complainant to the relief of reformation."

Illustrations might be multiplied, but the foregoing are deemed sufficient to indicate that the facts found in the present case, when broadly considered and accurately construed and appraised, are such as to warrant reformation under the rule we are now considering. The agreement which was sought and intended to be expresesd and effectuated by the authorization for delivery of bonds was that of the defendant to accept and of the plaintiff to deliver bonds of an agreed amount—$3950. The defendant's first offer was to take bonds in the amount of $4200 for a release of his mortgage. It is found that the defendant knew that the plaintiff could not loan in excess of eighty per cent of the appraised value. It is an inescapable inference that he made his second offer and consented to accept $3950 in bonds because of knowledge that the appraisal of the property which had then been made would not permit of the issuance to him of bonds to the amount of even his first offer, $4200, and necessitated the further reduction which he made in his second consent. Acceptance by the plaintiff of this latter offer is clearly evinced by its proceedings toward closing the loan and, as applied to the defendant, by forwarding to him the form for his mortgage statement and notification to him to attend the closing. Neither up to nor at the closing did he withdraw his outstanding consent to accept $3950 in bonds or otherwise dissent from the agreement, but when the attorney in charge of the closing inquired if a sum nearly $1000 larger ($4849.32) was the correct amount that he was to receive he "replied that it was," concealed the surprise which he must have felt, asked no questions and made no comment, and, although he well knew that he had agreed to accept a much less

amount, accepted authorization for the delivery of $4750 in bonds. Later, when the plaintiff, having discovered the error, requested return of the authorization for correction, the defendant refused, retains it in his possession and demands, in a cross-complaint in this suit, delivery of bonds in the amount called for by it.

The position of the defendant is not materially aided, so far as the issues here are concerned, by the finding to the effect that at the time he accepted the authorization he did not know the final valuation placed on the property by the plaintiff, and did know that the plaintiff was accepting a mortgage for $5094.36. Acceptance of the mortgage of this amount was affected by the same mistake as the amount of the authorization issued to the defendant and the plaintiff avows its willingness to correct the error by proper adjustments and reduction. Even if, as the finding states, the defendant, at the time of closing, believed that the final appraised valuation was sufficient to permit a loan of the amount stated in the mortgage, he knew that the amount of the authorization tendered him did not accord with the agreement which he had previously made, but he accepted it without the substitution of another, or inquiry or discussion as to any change in conditions, since the agreement, which would warrant or permit alteration of it by a large increase in amount.

The trial court concluded, from the facts found, that "there was no fraud on the part of the defendant, nor was there mistake on his part." We accept the conclusion that there was no mistake on the defendant's part, at least so far as concerns the essential facts of the agreement to give and accept bonds to the amount of $3950, and that the authorization as issued and accepted called for a much larger amount. If we ac-

cept the conclusion that there was no fraud to the extent that no actual fraud was shown, that does not suffice to entrench the defendant against reformation. If he is chargeable with constructive fraud, or unconscionable or inequitable conduct, that is sufficient to satisfy the rule, and this we consider to be abundantly established by the facts. The further conclusion that the defendant "was offered repayment of his loan in full, accepted it and released his mortgage" does not alter the situation, the offer being a result of mistake and the acceptance, with knowledge, tainted with concealment or nondisclosure.

We consider that reformation is not only justified under the applicable rule and required by equity to the plaintiff, but also that in ordering it we are incidentally conferring a substantial benefit upon the defendant. The further conclusion of the trial court, that because of the limitation in the act to eighty per cent of the appraisal the plaintiff is without authority to deliver bonds to the amount called for in the authorization as it now stands, stands unattacked. For the defendant to persist in demands for a larger amount of bonds than the act permits cannot be regarded other than as folly.

There is error. The case is remanded to the Superior Court with direction to enter judgment that upon the release by the plaintiff of the note and mortgage executed by Ethel M. Smith and the execution and delivery by her to the plaintiff of a new note and mortgage for the correct amount, the authorization be reformed to such extent as shall entitle the defendant to bonds of the face value of $3950, as per consent, Exhibit E, only, and for the plaintiff on the cross-complaint.

In this opinion the other judges concurred.