SMITH CONSTRUCTION CO., INC.
*vs.*
TOWN OF STAFFORD

Superior Court      New Haven County      File No. 57265

MEMORANDUM FILED APRIL 16, 1940.

*Leon E. McCarthy,* of Ansonia, for the Plaintiff.

*Joel H. Reed, 2nd,* of Stafford, for the Defendant.

INGLIS, J. This is an action to reform a building contract between the parties and for damages.

By the terms of the contract, which was entered into on December 23, 1937, the plaintiff agreed to erect a school building for the defendant for the contract price of $134,023. The contract was awarded to the plaintiff because it was the lowest bidder. The base bid of the next lowest bidder was about $6,000 in excess of the base bid of the plaintiff.

In preparing the bid submitted by the plaintiff, a few days before the awarding of the contract, Michael D. Smith, the treasurer of the plaintiff, without negligence on his part, made an error in that he mislaid certain of his work sheets and in ·consolidating his figures figured on the basis of the job requir

ing 60,000 face brick whereas it turned out later that the number of face brick needed was about 122,500.

In January, 1938, after work on the building had been started, the parties started to talk about substituting tapestry face brick for the common face brick called for in the specifications. As a result of this talk, the plaintiff, still figuring on the basis of 60,000 face brick as being the amount necessary for the building, on January 27, 1938, submitted a written proposal to substitute tapestry face brick, as per samples submitted, for an additional charge of $1,080. On January 29th, the defendant in writing accepted that proposal. Later, on February 7th, it appearing that the samples of tapestry face brick submitted had not been described in writing, the defendant wrote a supplemental letter specifying that the tapestry face brick should be Pennsylvania tapestry face brick. This, however, did not alter the fact that the contract for the substitution of tapestry brick was closed as of January 29th.

The error in estimating was not discovered by the plaintiff until the latter part of April when the 60,000 brick had been nearly all laid up and it became apparent that the building was nowhere near completion.

At the time the original contract was entered into, the defendant did not know that the plaintiff in preparing its bid had figured on only 60,000 face brick. Neither did it know how many face brick would be required. The defendant's architect, who by the contract is made its agent, had made a rough estimate of the probable cost of the building but, in doing so, had not segregated the item of face brick from the estimated total of all brick required, and even though he had known that the total number of all brick estimated by the plaintiff was 62,500 lower than the total number of brick which he had estimated, that difference in comparison to the total number of brick would have appeared to him inconsequential. Accordingly, neither the defendant nor any of its agents had any intimation that the plaintiff had made any mistake in figuring its bid and neither the difference between that bid and the bid of the next lowest bidder, nor the difference between the plaintiff's bid and the architect's estimate, was large enough to put the defendant on notice that a mistake had occurred.

At the time the agreement for the substitution of tapestry brick was made the situation with reference to the defendant's lack of knowledge of the mistake had not changed. It is true

that probably a few days before January 27, 1938, the defend-ant's architect had seen a penciled draft of the plaintiff's de-tailed estimates which showed 60,000 face brick as estimated. The requirement contained in the contract that such a detailed estimate be submitted, however, was primarily a requirement of the P.W.A., which was assisting in the financing of the project, and instead of examining the pencil draft thereof the architect directed the plaintiff to turn it over to the P.W.A. engineer for checking. It was so checked and with some al-terations put into type and delivered to the architect on Janu-ary 31st, two days after the agreement for the substitution of tapestry brick was closed. On February 2nd it was examined and approved by the architect. But even then because his at-tention was centered on totals of the prices of labor and materials estimated rather than on the quantities of materials and because he still did not know how many face brick as a segregated item would be required, he did not realize that the plaintiff had made any mistake in estimating the quantity of face brick. Neither the defendant nor any of its agents had any knowledge nor intimation that the mistake had occurred until after the mistake had been discovered by the plaintiff.

The difference in the cost of the materials and labor in the laying of the approximately 122,500 tapestry face brick actu-ally laid and the cost of laying the 60,000 tapestry face brick estimated by the plaintiff would be approximately $3,270. Shortly after the discovery of the mistake the plaintiff de-manded an additional allowance of that sum but this allowance the defendant has persistently refused to make. At the time the final payment under the contract was made, the plaintiff gave notice that it was still demanding payment of this addi-tional allowance and under all of the circumstances the accept-ance of the final payment under the contract would not estop the plaintiff from collecting this additional amount (as claimed by the defendant) if as a matter of fact it were otherwise en-titled to it.

It is obvious that the plaintiff is entitled to recover the amount in question only if it is entitled to a reformation of the contract. A contract will not be reformed for a mistake which is merely unilateral. *Snelling vs. Merritt,* 85 Conn. 83. In order to offer ground for reformation it must appear either that the mistake was mutual or that there has been a mistake by one party coupled with fraud, actual or constructive, or inequitable conduct on the part of the other. "Fraud, for the purposes of

this rule, includes not only misrepresentation known to be such, but also concealment or nondisclosure by a party who knows that the other party is acting under a mistake as to material facts." *Home Owners' Loan Corp. vs. Stevens,* 120 Conn. ·6, 10. But where the constructive fraud or inequitable conduct relied upon consists merely of the fact that he knew that the other party had made a mistake and let that other party enter into the contract without apprising him of the mistake, that is ground for reformation of the contract, as distinguished from mere avoidance of the contract, only if the offending party knew exactly what the mistake was so that he knew what the term of the contract would have been if the other party had not committed the mistake. *Geremia vs. Boyarsky,* 107 Conn. 387; Restatement, Contracts §504, and Conn. Anno. p. 338. To reform a contract so as to correct a unilateral mistake under circumstances in which one of the parties did not know what the terms of the contract would have been if the mistake had not been made, at best would be the making of the contract for the parties by the court when the minds of the parties had not met on the term thereof with reference to which the mis-take had occurred.

On all of the evidence, it is concluded that the mistake made by the plaintiff in figuring its original bid and in figuring its charge for extras on the substitution of tapestry brick was purely unilateral. Because of the fact that the defendant did not know that a mistake had been made, nor was it even put on notice that a mistake had been made until long after the con-tract was signed and the agreement for the substitution of tapestry face brick had become binding on both parties, it has not been guilty of inequitable conduct which combined with the plaintiff's mistake would justify a reformation of the con-tract. Even though the plaintiff had known that some mistake had occurred it certainly could not have known what the con-tract price would have been if the mistake had not been made. Accordingly no reformation of the contract may be had and the plaintiff is not entitled to damages.

Judgment may enter for the defendant to recover of the plaintiff its taxable costs.