Complainant brings this suit to reform a written contract with defendant to restrain an action at law brought by defendant on the original contract, and for the enforcement of the contract, as reformed, by an accounting.
Complainant, hereinafter called the house company, was engaged in the business of building homes, and had in August, 1942, a large quantity of building material. It found itself unable to use this as its operations were frozen because of the war emergency. It accordingly negotiated a sale of all *Page 603 
this material to defendant, hereinafter called the sash company. The contract, as signed, provided for a sale price of $29,000 for a long list of items attached to the contract, with a provision for increases and deductions in accordance with values scheduled in the list for excesses and shortages over the items listed. The sash company paid the $29,000 and brought suit at law for the items listed, chiefly lumber, not delivered, claiming an overpayment at the rates set forth in the schedule of some $6,000. The house company counter-claimed for an alleged underpayment of some $11,000.
This controversy has been before the courts several times. In the suit now before this court on final hearing, the house company made a motion to restrain the action at law, and the sash company made a motion to dismiss the bill herein. Both motions were denied, and the denial of the motion to strike the bill was appealed from and affirmed by the Court of Errors and Appeals. The action at law was tried, with a judgment entered, dismissing both the complaint and the counter-claim. The sash company appealed from this judgment and the Court of Errors and Appeals reversed it, reinstating both the complaint and the counter-claim for trial. This retrail awaits the decision in the present suit.
This court is therefore enabled, under the decision of the Court of Errors and Appeals, to pass on the merits of the contention that complainant is entitled to a reformation of the contract, on a consideration of the testimony had on final hearing. The rulings of the higher court on the principles involved here are, of course, controlling in this court. The Court of Errors and Appeals held that in the action at law, since the terms of the integration are clear and explicit, extraneous evidence cannot be considered in aid of construction, and that if the instrument does not express the common intention, reformation in equity is the appropriate remedy. It also held that there could be no res judicata by the judgment in the Circuit Court, since it was reversed. This court is therefore free to decide whether the facts now adduced at final hearing entitle complainant to a reformation.
The reformation sought is as to certain items in the schedule attached to the contract, with a corresponding increase in the *Page 604 
price to be paid. In the schedule are several sets of items of rough lumber, under columns headed "unit" where are first set forth the number of items, then the size of each piece, as 2 x 4 8', then the "unit price," which in each case regarding lumber is "55 M," and finally in the last column a price for all the pieces of that size. In all the items of lumber, the final figure is the number of pieces, multiplied by $.055, and not at the rate of $55 per thousand feet of board measure. It is contended that the last column, the price, should be figured at the unit price $55 and the contract should be reformed accordingly. This would increase the amount to be paid by many thousands of dollars since all the pieces contain several and some many board feet. It is conceded that the expression 55 M is well understood in the trade to mean $55 per thousand board feet.
The error in calculating the value or price of the lumber was caused by the mistake of a stenographer in the employ of the house company who was directed to copy the partly made up list and extend the figures into the final column. She did so with the wrong method of computation, and as a result the totals of all the items in the schedule aggregated some $35,000 instead of some $48,000. Relying on the accuracy of the smaller figure, the president of the house company entered into the contract in suit, which by its terms agreed to sell all the items for $29,000. This figure was arrived at by deducting a discount of seventeen and one-half per cent. from the figure of $35,000.
Complainant contends that since the contract was entered into under the mistaken belief on its part that the articles sold were listed at a valuation of only $35,000, and that defendant either was equally mistaken as to the basis for the sale, or defendant actually knew of the mistake on complainant's part and took advantage of its knowledge and complainant's ignorance, the contract should be reformed to conform to the true intent of the parties.
Defendant contends that the mistake in computation if any was entirely the fault of complainant, that it never knew of any mistake, that the contract speaks for itself and has no relation to unit prices, and that the sale was a flat bulk sale *Page 605 
for a lump sum, namely the $29,000, for all the materials in complainant's stock irrespective of values but with allowances for excesses or shortages.
In deciding whether there should be a reformation it is necessary to consider the facts and circumstances surrounding the making of the contract to determine whether it embodied the intent of the parties.
About a week before the contract, learning that the house company had building materials for sale, the sash company sent its agents to inspect the material. They did so and at the time were furnished, or at least shown, a list of the stock supposed to be on hand. On the day of the contract several officers and employees of the sash company met the president of the house company at his office to negotiate a purchase. He showed them the list subsequently annexed to the contract as signed. This list had the extensions of the figures of the various items after the unit prices, including the erroneous extensions of the lumber items. The sum of the extensions was not set down, but he told them that the aggregate amount was slightly over $35,000, and showed them an adding machine slip he had, which had been used in making the addition. Price and terms of payment were then discussed and agreed on. The price arrived at was $29,000, which was seventeen and one-half per cent. discount from the $35,000. A like increase or decrease was agreed to at the same rate of seventeen and one-half per cent. above or below the unit prices for excesses or shortages. The president of the house company then dictated a memorandum of the transaction, but the representatives of the sash company insisted on calling in their attorney. He was sent for and he drew another form of contract, which was the one signed. This had no statement as to how the $29,000 was arrived at. The draft proposed by the president of the house company did.
Two versions of this proposed contract were presented at the final hearing. They differ in form but not in substance, as far as relates to the issue here. In the one produced by the attorney for the sash company, which he says was given him by the president of the house company, appear these significant words: "It is understood and agreed by and between *Page 606 
the parties herewith, that the total amount of value of the attached list, as enumerated opposite each and every item, totals $35,172.91, thereby making the difference between the purchase price of $29,000.00 and the list price of $35,172.91 of 17 1/2% discount."
The attorney for the sash company, who was called in after the terms had been agreed to and who evidently did not know that the basis for the figures was the supposed total valuation which had been computed erroneously, seems to have innocently omitted any reference to this clause when he made his draft. But the representatives of the sash company knew the house company was relying on the figures. Several of them at various times in their testimony said that the president of the house company told them that the list aggregated some $35,000, that that was the basis for the figure from which the discount was to be taken, and that he showed them the adding machine slip to that amount. The office manager for the sash company said he believed the total actually was $35,000.
It clearly appears from these facts that the parties did not intend an ordinary bulk sale for a lump sum, but a sale of whatever materials the house company had in stock, at a unit price definitely fixed for each item; then a discount of seventeen and one-half per cent. from the price stated on the list, with the same allowance for unders and overs. Through an error in calculation, which was not called to attention at the time, the clear discrepancy which appears between the unit price for the lumber and the figure used in calculating the total, the total was far less than it should have been.
This is not a case of a unilateral mistake by the house company, and nothing more. Either the sash company officers were mistaken also as to the erroneous figures, or they knew the figures were wrong, and kept silent to take advantage of the house company. One or more of their witnesses testified that they were chiefly interested in the lumber, they had inspected it, and that they knew it was worth $15,000. Some of them examined the lists.
The sash company contends that under the contract as signed it is entitled to retain the lumber delivered to it at *Page 607 
approximately one-tenth the unit price appearing in the contract, and at the same time charge the house company with shortages at the full unit price. Under the circumstances disclosed here, this would be unconscionable.
This suit falls within the principles set forth in Lionel C.Simpson Plumbing and Heating Co. v. Geschke, 76 N.J. Eq. 475,
where the court says: "So far, therefore as the complainant is concerned, the written contract contained a mistake; so far as the defendant is concerned, if he did not observe the error in the writing then the writing embodies a mistake on his part; if the defendant did observe the error in the writing, then his failure to disclose that fact to complainant constituted such unconscientious or fraudulent conduct upon his part as to entitle complainant to the relief of reformation; so that as far as defendant is concerned it is utterly immaterial whether he failed to notice the mistake, as did complainant, or whether he discovered the mistake and failed to communicate it."
See, also, Lewis Stern Sons, Inc., v. Connolly, 95 N.J. Eq. 356; Zarecki v. Guarantee Realty Co., 82 N.J. Eq. 489; Forman
v. Grant Lunch Corp., 113 N.J. Eq. 175. Complainant is entitled to a reformation of the contract, and an accounting, and a decree to that effect will be advised. *Page 608