**Thomas J. DONOHUE and Camille M. Donohue, Plaintiffs,**

v.

**John PICINICH, Defendant.**

**No. 92 Civ. 317 (TFGD).**

United States District Court, D. Connecticut.

April 21, 1994.

Cohen & Wolf, Joseph G. Walsh, Danbury, CT, for plaintiffs.

Pinney, Payne, Van Lenten, Burrell, Wolfe & Dillman, Jackie Chan, Danbury, CT, for defendant.

## OPINION

MOTLEY, District Judge (by designation):

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter arises from a dispute involving a contract for the sale of real estate. Plaintiffs Thomas J. Donohue and Camille M. Donohue, residents of Bronx County, New York, have filed a complaint against defendant John Picinich, a resident of New Fairfield, Connecticut, seeking specific performance of the contract for the sale of lots 39 and 40 on Fleetwood Drive in New Fairfield, Connecticut entered into between the parties in March 1992. Defendant, in turn, asks this court to rescind the contract on the theory of mutual mistake or, alternatively, on the theory of unilateral mistake combined with unequitable conduct by plaintiffs.

Jurisdiction of this court is based on 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds the sum of $50,000. For the reasons stated below, plaintiffs' request for specific performance is denied. However, this court finds that equitable considerations merit reforming the language of the contract entered into by the parties to reflect their mutual agreement to convey two acres of land in addition to the land encompassing a pond located on Lots 39 and 40 of Fleetwood Drive in New Fairfield, Connecticut.

## FACTS

Thomas and Camille Donohue, lifelong residents of Bronx County in New York, came to New Fairfield, Connecticut in January 1992 to purchase a home. Plaintiffs had never purchased a home before and neither had ever been a real estate salesperson or land surveyor.

After receiving information from a family friend who resided in Fairfield County, Camille Donohue contacted Claire Luks Realty Co. and the Donohues were shown a number of homes by Suzanne Stasko, a Claire Luks real estate agent. Among the properties plaintiffs were shown were Lots 39 and 40 on Fleetwood Drive, more commonly referred to as 20 and 22 Fleetwood Drive, the properties which are the subject of said dispute. Describing what they saw and the representations made to them when they were shown the tracts, Camille Donohue testified:

> "A. We approached the house and we were in front of the house. We decided we would go in after hearing a couple of things about why, maybe why we shouldn't, but we decided to go into the house. There was a lot of work that had to be done. My husband is very good with that stuff so we decided we would check it out. I fell in love with the house immediately. The pond made the house so picturesque. It was so country. It was different than I was used to.
>
> . . . . .
>
> A. [W]e were just looking outside at the children outside [sic] skating on the pond, and [Suzanne Stasko] mentioned that—she had shown me a "No Trespassing" sign, and she said to me, "You have to keep this sign up and you have to be very careful because if any children get hurt on the pond, you're going to be responsible."
>
> Tom and I talked and we said that would be no problem because we wanted the children to skate, but we would check out with their parents.

She also told us that there was a small piece of land on the other side—adjacent to the other side of the street that we would have to be responsible to mow or to clear of [sic] the snow, and we also felt that that wasn't a problem.

Q. That part was on the other side of the pond?

A. That's right.

Q. Did she tell you whether or not the land included the pond?

A. She said the house was "with the pond."

Tr. 14–15 (emphasis supplied).

The land referred to in Camille Donohue's testimony is owned by defendant John Picinich, a retired land developer in Fairfield County. Picinich purchased two contiguous tracts of land, Lots 39 and 40, in the Town of New Fairfield in 1978. Tr. 74–76. Subsequent to purchasing these properties, defendant obtained building permits from the town to build houses on each of the two parcels. Defendant built a single family home on Lot 39 but Lot 40 remained vacant. *Id.*

In January 1992, defendant decided to sell both properties and listed them for sale with Victor Muraca, a real estate agent employed by R.K. Gallo Associates, Inc. Tr. 77. Picinich and Muraca entered into a listing agreement to sell the properties; they also agreed to list the properties on the Multiple Listing Service ("MLS Listing"), a real estate service that provides property listings for all realtors in a certain geographical area. Tr. 126–128. Through the multiple listing service, Suzanne Stasko obtained information about the property that was shown to plaintiffs as 22 Fleetwood Drive. Tr. 95–98.

When plaintiffs were shown the properties, they were shown an advertisement prepared by Mr. Muraca's real estate company which showed a picture of the house located on 22 Fleetwood Drive. The list price of the house was $189,900 and the property was described as follows:

"EXCEPTIONAL BUY!! 2 ACRES WITH POND.... 2600 sq. ft. Offers cathedral ceiling in LR, formal DR, main level Laundry ... 2 car garage, eat-in-kitchen, Oil HWBB heat ... WHERE ELSE CAN YOU GET A HOME FOR THIS SIZE AT THIS PRICE!!"

Def.'s Ex. A (emphasis supplied)

Additionally, the MLS listing for 22 Fleetwood Drive, to which plaintiffs did not testify being shown, described the property as a "beautiful 4 bedroom colonial ... Level 2 acres with 'pond'!!!" Def.'s Ex. G. Neither advertisement indicated that a contiguous tract, Lot 40 (20 Fleetwood Drive), was separately being offered for sale. Moreover, neither party introduced any evidence at trial that defendant or his realtor had placed boundary markers separating 22 Fleetwood Drive from the vacant land on 20 Fleetwood Drive. In fact, Suzanne Stasko testified during the trial that she was not aware that the property that she represented to the Donohues as 22 Fleetwood Drive actually consisted of two lots which had been separately offered for sale.[1] Tr. 109–115.

---

1. More specifically, Stasko testified as follows: "Q. [N]ow when you showed the Donohues the house, did you know that part of the property was supposedly a separate lot not to be included with the house?
A. On the day I showed them?
Q. Right.
A. No.
Q. And did you even know that there was some separate lot for sale?
A. No.
Q. So you never told them that the land that they saw was actually two lots and they would only get one of them, right?
A. No, not at that time.

. . . . .

Q. [W]hat do you remember that the multiple listing said about the land and the pond?
A. Just that it said two acres with pond.
Q. And were there three exclamation points after where it said "with pond?"
A. Yes, and in quotations.
Q. And when you as a realtor read that and said it was with a pond, did you think that it meant with a pond?
A. Yes.
Q. Did you think it meant with the whole pond?
A. Yes.
Tr. 109–110, 113.

Relying on the advertisement prepared by Mr. Muraca and the representations made by Ms. Stasko, plaintiffs contracted to purchase the property which they were shown. On January 31, 1992, they signed a purchase agreement for the sale of 22 Fleetwood Drive that was also signed by Ms. Stasko, Mr. Muraca and defendant. According to the terms of the purchase agreement, plaintiffs agreed to purchase defendant's property for $180,000 with $1,700 payable as a deposit, $7,300 payable upon the signing of the sale contract, $9,000 payable upon approval of their mortgage, $18,000 payable at the title closing, and the balance of $144,000 payable by mortgage on said property. Def.'s Ex. B.

Subsequent to signing the purchase agreement, plaintiffs hired Ann Quaranta, Esq. to represent them in the sale. In February 1992, Attorney Quaranta received a contract from James J. Jowdy, Esq., defendant's attorney. The contract specified the terms of the agreement which had been previously reached between the parties, and described the land that was to be conveyed. Schedule A to the contract described the property to be sold as follows:

ALL THOSE CERTAIN pieces or parcels of land known as Lots Nos. 39 and 40, Fleetwood Drive, consisting of 1.937 acres and 1.808 acres, more or less, respectively, and situated in the town of New Fairfield, county of Fairfield, and State of Connecticut, as shown and designated on a map entitled, "Map One, Section Two, High Ridge Estates, Prepared for Max Kaplan, town of New Fairfield, county of Fairfield, state of Connecticut, Scale 1" = 100', June 9, 1969, certified substantially correct, Herbert M. Bennison, R.L.S., Charles J. Osborne Associates, New Milford, Connecticut," which map is recorded in the New Fairfield Land Records as Map No. 1397, described in Book 109 at Page 434. Said Lot No. 39 is described as follows: Beginning at the northeast corner of the herein-described parcel, said point being the northwest corner of Lot 38. Thence S 0 36' 21" W, 290.40' to a point marking the southeast corner of the herein-described parcel and the southwest corner of Lot 38. Thence turning and running N 89 23' 39"

W, 303.91' feet a point on the easterly side of Fleetwood Drive, so-called. Thence turning and running along the easterly side of Fleetwood Drive, N 1 56' 26" E, 90.51 to a point. Thence along a curve to the right with a radius of 204.69' and a length of 316.76' to a point. Still along said Drive, S 89 23' 39" E, 97.16' to the point or place of beginning.

Containing 1.808 acres and bounded as follows:
NORTH: Fleetwood Drive;
SOUTH: Lot 40;
EAST: Lot 38;
WEST: Fleetwood Drive.

Said Lot No. 40 is described as follows:

Beginning at a point marking the northeast corner of the herein-described parcel; said point being the northwest corner of Lot 41. Thence turning and running S 0 36' 21" W, 285.24' to a point on the northerly side of Fleetwood Drive, so-called. Thence turning and running along the northerly side of said Drive N 89 23' 39" W, 126' to a point. Thence along a curve to the right with a radius of 200.28' and a length of 319.26' Thence still along said Drive N 1 56' 26" E, 80.32' to a point marking the northwest corner of the herein-described parcel and the southwest corner of Lot 39. Thence turning and running along said Lot 39, S 89 23' 39" E, 324.35' to the point or place of beginning.

Containing 1.937 acres and bounded as follows:
NORTH: Lot 39 and Lot 38, each in part;
SOUTH: Fleetwood Drive;
EAST: Lot 41;
WEST: Fleetwood Drive.

The property description included in Schedule A was given to Attorney Jowdy by Mr. Picinich. When defendant gave Attorney Jowdy the deed containing the property description, he made no indication that only Lot 39 should be described in Schedule A of the contract. As a result, Attorney Jowdy, not realizing that the legal description contained more land than defendant now claims he intended to sell, incorporated the descriptions for both parcels of land in the contract which was sent to plaintiffs for their signature in February 1992. Tr. 217.

At the time Attorney Jowdy forwarded the real estate contract to plaintiffs, defendant had not yet reviewed the contract. Tr. 43–44. After reviewing the contract with their attorney, plaintiffs signed the contract and returned it to defendant for his review and signature. Tr. 9. On or about March 2, 1992, defendant signed the contract. Tr. 44. During the trial, defendant testified that at the time he signed the contract, he did not review the property description included in Schedule A because he felt it was "just a formality [and] a technicality." Tr. 83. Actually, it was not until April 16, 1992, approximately six weeks after both parties had signed the contract and one week before the parties were scheduled to proceed to closing, that defendant noticed that the property description erroneously included Lots 39 and 40.

After realizing the error contained in Schedule A to the contract, defendant has since refused to proceed to closing on both properties. According to plaintiffs, it was their understanding that "they were purchasing all of the land they were shown, which included the land encompassing the pond." They further contend that at the time they signed the contract, they "did not know that the defendant intended to sell real property to them other than that which was described in the contract. . . ." Pl.'s Prop. Find. Fact/Concl. Law, ¶¶ 15, 19. Accordingly plaintiffs seek specific performance of the contract as signed by the parties on March 2, 1992.

Conversely, defendant claims that "there was a mistake in the legal description attached to the contract of sale that included property that was not involved in the negotiations for sale nor intended to be sold to the plaintiffs." In essence, defendant alleges that he "agreed to sell to the Plaintiffs [sic] the property known as 22 Fleetwood Drive, which is a parcel of land with an area of 1.808 acres with a dwelling located on it." Def.'s Trial Br., 2. Thus, defendant seeks "reformation of contract, correcting the legal description to the contract of sale to be performed by the parties; or [ ] recision of the contract on the basis that the subject matter of the contract was not agreed upon by the parties . . .; and damages for breach of contract if [this court] finds that the plaintiffs have acted inequitably when the mistake was brought to their attention." Id.

## DISCUSSION

 It is well-established that the remedy of specific performance is available to enforce contracts for the sale of real estate. *Four D's Inc. v. Mattera,* 25 Conn.App. 308, 315, 594 A.2d 484, 488 (1991); *Hodges v. Kowing,* 58 Conn. 12, 21–22, 18 A. 979 (1889). A party is not entitled to specific performance as a matter of right but can only avail himself of this remedy upon an evaluation of equitable considerations. Thus, "applications for specific performance of [real estate contracts] are addressed to the discretion of the court which must determine upon the facts and under the circumstances whether the contract is fair, reasonable, on good consideration, free from fraud, surprise or mistake and made according to the requirements of the law." *Sidor v. Kravec,* 135 Conn. 571, 573–74, 66 A.2d 812, 813 (1949).

 Before this court can find for either party, it must first determine whether the parties entered into a valid contract. "In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties." *Steinberg v. Reding,* 24 Conn. App. 212, 214, 587 A.2d 170, 172 (Conn.App. 1991) (citations omitted). Moreover, the mutual understanding must manifest itself by a mutual assent between the parties. *Id.*

 Defendant claims that there was never a mutual agreement between the two parties regarding the sale of Lots 39 and 40 located on Fleetwood Drive in the town of New Fairfield Connecticut. To the contrary, defendant argues that he agreed to sell only 1.808 acres contained on the property known as 22 Fleetwood Drive, which included a portion of the pond which extends over Lots 39 and 40. Accordingly, he asks that this court either reform the language of the contract or rescind it because of a mutual mistake regarding the land description contained in Schedule A.

This court agrees that the parties were mutually mistaken about the land described

in Schedule A to the contract. However, we do not find that plaintiffs acted inequitably towards defendant in any way. When plaintiffs were shown the property which they thought was 22 Fleetwood Drive, they were not aware that they were actually seeing 3.5 acres of land as opposed to "2 acres with a pond." Even Ms. Stasko, an experienced real estate agent, could not tell that the property she was showing was more than two acres of land. Accordingly, given their lack of experience in the area of real estate, plaintiffs actually believed the property described in Schedule A represented the property they were shown and thought they were purchasing.

However, despite the mistaken land description, the court finds that the parties reached a mutual agreement to sell two acres of land on Fleetwood Drive with the *entire* pond. Both the advertisement prepared by Mr. Muraca and the MSL listing advertised the property as "2 acres with a pond." As stated previously, neither advertisement stated that the pond was contained over two parcels of land. Further, while defendant drew a map during trial showing the pond in equal portions on both properties he did not introduce into evidence a professional survey actually showing the location of the pond on the land, a material fact which is dispositive on this issue.

Based on the evidence presented at trial, the parties mutually agreed to enter a contract to convey the property located on 22 Fleetwood Drive which, based on the representations of defendant, consisted of "2 acres with a pond." Unlike plaintiffs, defendant is an experienced real estate developer who we assume was fully aware of the representations being made and intended to sell exactly what was described in the advertisement and MLS listing. As a result, this court finds that the contract signed by the parties on March 2, 1992 for the sale of Lot 39 Fleetwood Drive must be reformed to reflect their mutual understanding that said property consisted of 2 acres with the adjacent pond.

■ Connecticut courts have held that reformation is an appropriate remedy in cases of mutual mistake—"that is, where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction." *Harlach v. Metropolitan Property & Liability Ins. Co.,* 221 Conn. 185, 190, 602 A.2d 1007, 1009 (1992) (*quoting Home Owner's Loan Corporation v. Stevens,* 120 Conn. 6, 9–10, 179 A. 330, 331 (1935)). Since the March 2 contract fails to express the mutual understanding of the parties, defendant is hereby ordered to obtain a professional survey of both Lots 39 and 40 and redraw the boundaries such that plaintiffs receive 2 acres and any additional land encompassing the pond. The redrawn Lot 40 will remain defendant's separate property. After receiving such survey, a revised description reflecting the changes ordered above will become the new Schedule A to the contract; the remainder of the contract will continue to reflect the agreement of the parties before plaintiffs brought their claim.

■ Pursuant to paragraph B of the Residential Addendum to the real estate contract, the prevailing party in any related litigation is entitled to costs and reasonable attorney's fees. Pl.Ex. 1. However, since neither party prevailed on their respective motions, their applications for attorney's fees are denied.

### CONCLUSION

In conclusion, plaintiffs' claim for specific performance is denied. However, notwithstanding this court's decision on their claim, we find equitable considerations merit reforming the language of March 2 contract to reflect the mutual agreement between the parties regarding the land comprising the property commonly referred to as 22 Fleetwood Drive. Accordingly, defendant is ordered to have the boundaries on both Lots 39 and 40 redrawn such that plaintiff receives two full acres of land and the entire pond currently located on both tracts. Defendant's alternative request for recision of the March 2 contract is denied.

### ORDER

For the reasons stated in the accompanying opinion, plaintiffs' request for specific

performance is denied. However, the court finds equitable considerations merit reforming the contract to reflect the mutual agreement between the parties to convey two acres of land in addition to the land encompassing a pond located on Lots 39 and 40 of Fleetwood Drive in New Fairfield, Connecticut.

Accordingly, defendant is hereby ordered to obtain within thirty days from the date of this order a professional survey of Lots 39 and 40 that redraws the boundaries such that plaintiffs receive two acres and any additional land encompassing the pond for the consideration that they are providing pursuant to the contract entered into between the parties in March 1992.

Since neither party prevailed on their respective motions, neither party is entitled to recover costs or attorney's fees.

SO ORDERED.