**TILCON MINERALS, INC., Plaintiff,**

v.

**ORANGE AND ROCKLAND UTILITIES, INC., Defendant.**

**ORANGE AND ROCKLAND UTILITIES, INC., Plaintiff,**

v.

**TILCON MINERALS, INC., Defendant.**

Nos. 93 Civ 6132 (VLB), 93 Civ 7026 (VLB).

United States District Court, S.D. New York.

Dec. 6, 1994.

Richard J. O'Keeffe, O'Keeffe, Kline & Lindgren, White Plains, NY, for Tilcon.

Alan Warshauer, Wormser, Kiely Galef & Jacobs, New York City, for Orange.

### MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This dispute arises from unexpected consequences of an agreement (the "agreement") between Tilcon Minerals, Inc. ("Tilcon") and Orange and Rockland Utilities, Inc., entered into on December 9, 1985 (the "1985 agreement") under which Orange purchased from Tilcon more than 200 acres in Stony Brook, New York. The agreement required that Orange pay the cost of relocating a rock crushing plant on the property sold at locations set forth on an Exhibit E to the agreement, subject to more detailed provisions concerning the site of the relocation.

The parties thereafter sued each other seeking declaratory judgment and other relief. No physical relocation of the plant has been undertaken, apparently in part because of water table conditions not anticipated in 1985.

In a memorandum order dated March 4, 1994, motions of both parties for declaratory judgments and other relief were denied on the ground that enforcement of specific performance of the agreement was inappropriate and declaratory judgment premature since any loss due to breach of the agreement could be—and would best be—determined after its implementation. *Tilcon Minerals v. Orange & Rockland Utilities*, 851 F.Supp. 529 (S.D.N.Y.1994).

The March 1994 decision permitted either party to move that jurisdiction be reserved. Tilcon has done so and asks that the litigation be reactivated and for related relief, which is granted to the extent set forth below.

## II

The structure of the 1985 agreement, calling for one party to pay readily controvertible reasonable costs of future engineering work (rather than including a negotiated monetary payment to cover consequences of the need to relocate or abandon the plant) almost assures disputation and in itself approaches the dimensions of a mutual mistake. See Eisenberg, "Private Ordering Through Negotiation," 89 Harv L Rev 637 (1976).

It appears likely that because of changed circumstances, moving the plant would be unprofitable if the interests of both parties were pooled. Had all facts now available been known in 1985, rational negotiators for the parties would have attempted to determine the best outcome by pooling the combined interests of parties and then dividing the benefit obtained so that each party is better off than without the resolution adopted. See T. Schelling, *The Strategy of Conflict* (1960).

Reformation of the agreement to create arrangements which the parties would have been most likely to have negotiated had currently available information been known, is the traditional and presumptively appropriate judicial response. *National American Corp v. Federal Republic*, 597 F.2d 314 (2d Cir.1979); *Lazarus v. Bowery Savings Bank*, 16 N.Y.2d 793, 262 N.Y.S.2d 717, 209 N.E.2d 889 (1965); *Donohue v. Picinich*, 852 F.Supp. 144 (D.Conn.1994); see also Farnsworth, "Disputes Over Omissions in Contracts," 68 Colum L Rev 860 (1968); Farnsworth, "Some Considerations in the Drafting of Agreements: Problems in Interpretations and Gap–Filling," 23 Rec Ass'n Bar City NY 1095 (1968); Jones, *The Jurisprudence of Contracts*, 44 U Cinc L Rev 43 (1975).

## III

The parties are directed to submit comments and any factual materials they wish within thirty (30) days of the date of this memorandum order concerning (a) whether or not reformation of the agreement is appropriate, modifying it to substitute a monetary settlement for the ongoing obligations of the parties under the agreement, in such manner as the court finds the parties would have been agreed upon on an all-facts-known basis, (b) what monetary settlement would be appropriate were such reformation to be ordered.

SO ORDERED.