[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On September 19, 1999 the court heard the defendant's motion to dissolve a certain us pendens filed on the Ellington land records on a parcel of land located on Egypt Road and comprising of approximately 35 acres. As a result of that hearing the court ordered the lis pendens released on all but approximately .6 acres. On October 1, 1999 the defendant, through new counsel, sought to reargue the court's decision and to present additional testimony. The court agreed to allow the defendant to supplement the original testimony. As a result of this decision the parties presented additional evidence on November 3rd and 4th 1999.[1]
The court heard testimony from the defendant and his attorney, Atherton Ryan, who represented the defendant at the CT Page 14782 closing. Testimony was also elicited from plaintiffs closing counsel, Arthur Meisler, as well as from the defendant's engineer who was charged with design and layout of the subdivision, as well as an official from the town of Ellington who was active in the subdivision process. The court also heard additional testimony from the plaintiff. Based on the testimony from the first and second hearings, the court finds the following facts:
 1. On or about June 3, 1998, the plaintiff, Gloria Coles, entered into a purchase and sale agreement with the defendant for the conveyance of certain real estate in the town of Ellington of approximately 39 acres.
 2. The property described in the purchase and sale agreement did not include the house and 3.56 acres located at the southeast corner of the property.
 3. The excluded property included the residence of the plaintiff.
 4. Attached to the purchase and sale agreement, Exhibit A, was a conceptional subdivision layout created by Gardner and Peterson Associates dated January 7, 1992. This layout showed the general location of the entire parcel relative to the surrounding roads as well as a 32 lot subdivision layout which layout numbered the individual lots. The purchase and sale agreement stated that the plaintiff would convey to the defendant "the real property and all appurtenances thereto, set forth and described in Exhibit "A" annexed hereto and made a part hereof (excluding the existing house and house lot noted as Lot # 1 and 2 on Exhibit "A" located at Egypt Road, Ellington, CT.)" See Plaintiffs Exhibit A.
 5. Also included with the purchase and sale agreement as part of the addendum was a listing by lot number of the square footage of each lot, the frontage, and the soil types.
 6. The addendum indicates that lots 1 and 2 contain 3.56 acres.
 7. The defendant sought land use approvals for a subdivision plan from the appropriate town boards and commissions and on September 28, 1998, he received the necessary approvals.
 8. The defendant obtained subdivision approval based on the CT Page 14783 maps submitted to the Town, Exhibit 5, on September 25, 1998 subject to the satisfaction of terms contained in the town engineer's letter, Exhibit 3.
 9. No condition contained in Exhibit 3 required any modification to the road location.
 10. The granting of subdivision approval was a final decision of the Town subject to appeal.
 11. The plaintiff demanded that the closing take place within 7 days after the expiration of the appeal period but the closing was delayed by the defendant.
 12. The defendant had the approved plans modified, at the behest of the Town, after the September 25, 1998 approval. These modifications substantially changed the road location and were not mandated by the engineers letter, Exhibit 3.
 13. Despite the fact that the drawings that were used to create the property description were dated October 26, 1998, Exhibit 6, they were not made available to defendant's closing attorney to draft the property description until either one or two days before the closing.
 14. The closing took place on the afternoon of November 24, 1998.
 15. At no time between October 26, 1998 and the closing date was Exhibit 6 shown to the plaintiff or her attorney.
 16. At no time were the significant changes from the approved plan (Exhibit 5) and the plan used to create the property description (Exhibit 6) ever discussed with the plaintiff or her counsel or brought to the attention of either.
 17. The plaintiff was not shown the plan (Exhibit 6) at the closing.
 18. The plaintiffs contract with the defendant contemplated the conveyance of approximately 39 acres of land to the defendant less lots 1 and 2 as shown in the attachments to Exhibit A.
 19. Lots 1 and 2 as shown in the attachments to Exhibit A CT Page 14784 contemplate the plaintiff retaining approximately 3.561 acres with frontage along the interior subdivision road of approximately 520 feet.
 20. Lot 181-009-0001, as shown on Exhibit 6, Sheet 5 of 21, has frontage along the interior subdivision road of approximately 476 feet.
 21. Lot 181-009-0001, as shown on Exhibit 6, Sheet 5 of 21, represents the lot of land contemplated by the parties to be retained by the plaintiff with the exception of the westerly boundary which boundary was contemplated to be approximately 44 feet to the west of the boundary shown.
 22. The defendant failed to disclose and concealed from the plaintiff the substantial changes in the shape and size of the property that the plaintiff was retaining.
 23. On December 24, 1998, the defendant caused to be removed certain trees and stone walls that were along the northerly and easterly 3.56 acres that the plaintiff thought she had retained. When she contacted the defendant, he advised her that "she didn't even have three acres."
 24. The shape and size of the parcel were critical to the plaintiffs enjoyment of the parcel as it impacts the enjoyment of her pool area. Additionally the shifting of the westerly boundary of the property to the east may have consequences with regard to the septic and well systems on the plaintiffs property.
 25. The plaintiff would not have proceeded with the closing had she known that the deed significantly changed the configuration and size of parcel that she was retaining as compared to that described in the purchase and sale agreement, Exhibit A.
 26. The defendant has expended a substantial amount of money in the development of this parcel. However much of the development occurred after December 24, 1998 when he first learned of the dispute over the boundary lines.
"An action seeking reformation of a deed is an action inequity. Patalano v. Chabot, 139 Conn. 356, 359-60, 94 A.2d 15
(1952). As such, before reformation can be granted by the court, CT Page 14785 equitable relief must specifically be requested by the plaintiffs." Prudent Projects v. Travelers Ins. Co.,3 Conn. App. 429, 431, 489 A.2d 396 (1985). "Reformation is not granted for the purposes of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties. . . . Equity evolved the doctrine because an action at law afforded no relief against an instrument secured by grand or as a result of mutual mistake." (Citation omitted.)Lopinto v. Haines, 185 Conn. 527, 532 (1981).
"Reformation is appropriate in cases of mutual mistake — that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction. 5 Pomeroy, Equity Jurisprudence (2d Ed.) 2096; 53 C.J. p. 941; Amer. Law Institute Restatement, Contracts, Vol. 2, 504, 505. . . . [R]eformation is also available in equity when the instrument does not express the true intent of the parties owing to mistake of one party coupled with fraud, action or constructive, or inequitable conduct on the part of the other. 5 Pomeroy Equity Jurisprudence (2d Ed.) 2097; 53 C.J. p. 949. . . ." (Citations omitted.) Home Owners' LoanCorporation v. Stevens, 120 Conn. 6, 9-10, 179 A. 330 (1935).Harlach v. Metropolitan Property Liability Ins., 221 Conn. 185,190-91, 602 A.2d 1007 (1992). "Fraud, for the purposes of this rule, includes not only misrepresentation known to be such, but also concealment or nondisclosure by a party who knows that the other party is acting under mistake as to material facts. Where, unknown to one of the parties, an instrument contains a mistake rendering it at variance with the prior understanding and agreement of the parties, and the other party learns of this mistake at the time of the execution of the instrument and later seeks to take advantage of it, equity will reform the instrument so as to make it conform to the prior understanding." (Citations omitted; internal quotation marks omitted.) Home Owners' LoanCorporation v. Stevens, supra, 120 Conn. 11. "Where fraud is absent, it must be established that both parties agreed to something different from what is expressed in writing, and the proof of this point should be clear so as to leave no room for doubt. Even where there is no actual fraud, but merely such knowledge as makes it inequitable for one party to retain his advantage, the court will deal as summarily with that inequitable position of the party as in the other case with his fraud."Lopinto v. Haines, 185 Conn. 527, 535, 441 A.2d 151 (1981). CT Page 14786
"The burden of proof on the issue of reformation is upon the party seeking it." Lopinto v. Haines, supra, 185 Conn. 535. "We have stated the standard of proof for reformation in different ways but all with the same substantive thrust: evidence should beclear, substantial and convincing. . . . The phrase clear substantial and convincing fairly characterizes that degree of belief that lies between the belief that is required to find the truth or existence of the issuable fact in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. In such cases as this which require such a showing of proof, the burden of persuasion is sustained if the evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true and that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . This standard of proof should operate as a weighty caution upon the minds of all judges, and it forbids relief, whenever the evidence is loose, equivocal or contradictory." (Citations omitted; internal quotation marks omitted.) Id., 534-35.
The court finds that the plaintiff has sustained her burden of proving that there is probable cause to believe that judgment will be rendered in her favor in this matter. The court further notes, as defendant's counsel correctly points out, that the plaintiffs burden at trial will require her to establish fraud or material misrepresentation by clear and convincing evidence.
In accordance with these findings of fact and conclusions of law, the plaintiff is ordered, consistent with this decision, to release the lis pendens with respect to the defendant's property with the exception of the approximate .6 acres within thirty days of the date of this decision. If the parties cannot agree on the property description that the release will encompass, the plaintiff shall file a motion for approval of the proposed release.
Zarella, J.